[No. 2755. April 14, 1923.]

## STATE v. ARDOIN

[Rehearing Denied. Aug. 21, 1923.]

### (SYLLABUS BY THE COURT.)

(1) In a homicide case, where the defendant seeks to justify on the ground of self-defense, and offers to prove specific acts of violence by the deceased toward third persons, of which he was informed, as bearing on the questions of aggression and the defendant's reasonable apprehension, the court should be guided by a reasonable discretion, and, whenever the specific act, by reason of its character, or its relationship in time, place, or circumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions or throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted. P. 643.

(2) Declarations of the deceased, prior to the homicide, of an apologetic frame of mind toward the defendant, uncommunicated to the defendant, and not a part of the res gestae, are not admissible in evidence. P. 650.

Appeal from District Court, Dona Ana County; Ed Mechem, Judge.

Eli S. Ardoin was convicted of murder, and he appeals. Reversed and remanded, with directions.

Holt & Sutherland, of Las Cruces, for appellant.

A. M. Edwards, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT.

BOTTS, J. Eli S. Ardoin, hereinafter referred to as defendant, was indicted and tried in Dona Ana county for the murder of one Miles Stevenson, and was convicted of murder in the second degree. At the trial he sought to justify the homicide on the ground of self-defense.

Upon his appeal, the first question raised by defendant is on the refusal of the court to admit testimony concerning a specific act of violence on the part

of the deceased committed toward a third person. The defendant was permitted to testify that the deceased in his lifetime had told him of this act of violence, but, upon his offer to prove by another witness that the deceased had likewise informed the witness concerning the same, the court refused to admit such proof, and denied the offer.

It should be stated at the outset that we are not here dealing with the question of whether or not general reputation may be proved by evidence of specific acts of violence, but that our inquiry is whether or not such specific acts have a relevancy independent of the general reputation of deceased. The authorities seem to be in a state of hopeless confusion, announcing rules ranging from that denying proof of specific acts of violence on the part of the deceased under any circumstances to the other extreme of holding such evidence admissible under all circumstances. No good can be accomplished by here reviewing the many cases examined, but as illustrative of two extremes we may call attention to the case of Alexander v. Commonwealth, 105 Pa. 1, where the court held it to be the settled rule that evidence of specific criminal acts at times other than that of the homicide, affecting other people than the slayer, are not admissible, even though the defendant had knowledge of such offenses prior to the homicide, and to the case of Bullock v. State, 73 Tex. Cr. R. 419, 165 S. W. 196, where the court held that, in addition to the right of the defendant to prove the character of the deceased as that of a violent and dangerous man, it was equally well settled that, when self-defense is in issue, and it is proper or necessary to show the state of mind of the appellant at the time of the commission of an offense, he can then show specific acts of violence which were then known to him, or had been communicated to him, which show, or tend to show, that the deceased was a violent and dangerous man. For other cases dealing with this subject, nearly all of which state the rule in a different form, the bar is referred to the following: Pritchett v. State, 22 Ala.

39, 58 Am. Dec. 250; People v. Harris, 95 Mich. 87, 54 N. W. 648; People v. Farrell, 137 Mich. 127, 100 N. W. 264; State v. Beird, 118 Iowa, 474, 92 N. W. 694; State v. Williams, 168 N. C. 191, 83 S. E. 714; Mortimore v. State, 24 Wyo. 452, 161 Pac. 766; Sneed v. Territory, 16 Okl. 641, 86 Pac. 70, 8 Ann. Cas. 354; Bailey v. People, 54 Colo. 337, 130 Pac. 832, 45 L. R. A. (N. S.) 145, Ann. Cas. 1914C, 1142; State v. Hanlon, 38 Mont. 557, 100 Pac. 1035; and notes, 124 Am. St. Rep. 1018, and 3 L. R. A. (N. S.) 351. In addition to the above, numerous other cases, most of which contain little or no discussion of the rule, will be found cited in the foregoing cases. From all this maze of conflicting and entangled lines of authority it has not been at all easy for us to evolve a rule to be applied to this case.

[1] In homicide cases, where the killing is sought to be justified on the ground of self-defense, two important questions of fact are presented to the jury for answer: (1) Who was the aggressor? and (2) What were the reasonable apprehensions of the defendant for his life and safety? We can say generally that whatever evidence will assist the jury in answering these question, or either of them, should be admitted if properly offered. Boyle v. State, 97 Ind. 322. So, if either party to the affray had been making threats against the other, although uncommunicated to the other, that fact would materially aid the jury in determining who was the aggressor, and, if made by the deceased against the accused, and known by the latter, would have a very material bearing upon the question of apprehensions. Likewise, if deceased bore the reputation of being a quarrelsome, violent man, that fact would have a bearing upon both questions, since it would be assumed that defendant, in common with his neighbors, knew of that reputation. But specific acts of violence on the part of the deceased, it would appear, might or might not also have a bearing upon one or both of these questions. Under some circumstances these facts might greatly assist the

jury, while under others they might tend to confuse.

When we speak of the general reputation of the deceased we refer to his reputation as of the time of the homicide, but specific acts of violence may have accompanied or immediately preceded the homicide, or may have been so far in the past as to have been almost forgotten, and the deceased may have since established an enviable reputation as a peaceable and law-abiding man. Again, specific acts of violence might materially assist the jury in deciding these questions, even though the reputation of the deceased could not be shown. For instance, if a man in Santa Fé reads in his paper that a stranger who is described in such a way that he can be readily identified has held up, robbed, and killed a man in Colorado, that he has not been seen since, but indications are that he has fled into New Mexico, and if, a few days thereafter, the Santa Fé man meets this stranger on a mountain trail and shoots him, as he claims, in self-defense, surely reason and common sense would demand that the jury trying our Santa Fé man for murder should be advised both of the fact of the Colorado homicide and of the defendant's knowledge or information concerning it, in order that they might more justly and intelligently determine who the aggressor was, and what were the reasonable apprehensions of the defendant at the time of the homicide. Yet some courts hold that the defendant would be limited to showing the bad reputation of the deceased. But in such a case a bad reputation does not exist. The deceased has no reputation; he is a stranger.

Let us suppose another case: A defendant is on trial for the murder of a man whose reputation in the community at the time of his death was and long had been enviable. No witness can be produced who will speak aught but good of that reputation. The defendant seeks to prove that 20 years previously deceased had confided to him that he had once had a fistic encounter in which he had whipped his adversary soundly, and further offered to prove the fact of such

encounter. Clearly such evidence would not only not assist the jury, but would tend to confusion, in that new issues would be brought into the case having to do with the conduct of deceased at a time long since past, and wholly unconnected with the main issue. To be sure, these supposed cases are at the two extremes of probability, but between these extremes where shall we draw the line and say that all evidence on one side is admissible and on the other inadmissible? From the many cases we have examined on this point it would seem not improbable that the different courts have often undertaken to formulate a rule admitting the evidence, or one rejecting it, depending upon whether the facts of a particular case bring it toward the one extreme or the other. Thus the Michigan court in the case of People v. Farrell, supra, announced three rules and intimated a fourth when it held that (1) a person charged with murder may show, for the purpose of proving that he believed his life in imminent peril, the general quarrelsome disposition of deceased, and that it was known by him to be such; (2) he may show specific acts of violence within his own knowledge or coming under his own observation; (3) he may not show specific acts of violence committed by deceased upon third persons in no wise connected with or observed by the accused; and (4) that the court would hesitate to say that testimony that the defendant had heard of specific acts of violence was not admissible. This case is cited and relied upon by the Supreme Court of North Carolina in the case of State v. Williams, supra, where the defendant was refused permission to testify that the deceased had previously told him that he had had a fight with a man in Richmond, and had stabbed him twice, it not appearing anywhere in evidence when the statement was made, no offer being made to prove the reputation or general character of the deceased for violence, it appearing that the deceased had boarded with the defendant, and that they were friends up to the fatal encounter, and there being no offer to prove that defendant believed deceased to

be violent, or that he was in fear of him. Thus the North Carolina court had before it a case in which reason and common sense would dictate the exclusion of such evidence as being of no assistance to the jury in determining either of the questions suggested above.

On the other hand, the Farrel Case was cited and relied on by the Supreme Court of Wyoming in the Mortimore Case, supra, in support of the proposition that evidence of violent acts toward third parties is admissible. Examination of the facts in that case reveals that the deceased was the father of the defendant, and that the particular act of violence, which had not come under the personal observation of the defendant, was committed against defendant's mother, wife of the deceased, at a neighboring ranch a short time before the homicide, and that upon her return home the mother informed the defendant of the act of violence, displaying bruises and other indications thereof ·present upon her person. So in that case the court was dealing ·with a set of facts which common sense would dictate should be admitted as having a decided bearing upon our two questions, and thereby being of assistance to the jury.

From what we have already said, it would seem that no inflexible rule of exclusion can be formulated by which to test in all cases the admissibility of such acts against third persons. Should the statement of a general rule be attempted, we would surely find ourselves embarrassed in its application to subsequent cases where the facts are different from those in the case at bar. It strikes us that the true guide should be a reasonable discretion, and whenever the specific act, by reason of its character, or its relationship in time, place, or cimcumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions or throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted. It is true collateral issues may thereby be presented.

evidence as to which there is no question of its admissibility, although this feature might, and no doubt would, be taken into consideration by the court in exercising the discretion necessary to determine the admissibility of this class of evidence in any particular case. Wig. on Ev. § 248, and State v. Hanlon, 'supra.

The defendant was permitted to testify that he knew of the particular act of violence on the part of the deceased, but the testimony offered and rejected was that of another witness concerning the same act. The defendant now says that this evidence should have been admitted, not only as bearing upon the question of aggression and the question of reasonable apprehension, but also by way of corroboration of his own testimony. This contention would seem to be sound if the defendant's own testimony concerning the specific act was admissible. We may theorize and rhetorize as much as we please on the doctrine of presumption of innocence, yet as a practical proposition we know that, when an indictment is returned against a defendant, all his acts and statements relating to the charge are looked upon with suspicion, and he should be permitted but so may they be presented by the admission of other to corroborate his own relevant testimony. The jury in this case may have doubted the defendant's statement concerning the specific acts, but such doubt might have been removed had he been permitted to show by others that the specific act had been committed by the deceased. State v. Hanlon, supra; Grayson v. Commonwealth (Ky.) 35 S. W. 1035. On the other hand, if his own testimony on this point was inadmissible, the fact that the court permitted it to go to the jury, either because no objection was made, or even over objection, would furnish no reason why it should be corroborated. The erroneous reception of his own testimony furnished no ground for receiving other and inadmissible evidence in corroboration of the evidence so erroneously received. It follows, therefore, that the question of whether or not there was error in refusing

to admit the testimony of defendant's witness depends upon whether or not his own testimony on the same point was admissible.

Application of the doctrine which we have announced convinces us that the testimony should have been received, and that the court erred in rejecting it. If this specific act concerning which the testimony was offered stood alone, we should hesitate to so hold, since the act occurred some six years previous to the homicide, and was in nowise connected with the defendant; but the record shows other specific acts of violence on the part of the deceased at various times subsequent to that sought to be proved; that evidence of deceased's reputation as being a quarrelsome and dangerous man was introduced; that he was much larger and more powerful than the defendant; that he had made threats against the defendant which had been communicated; that he was seen prowling about the house of the defendant on the night preceding the homicide; and from all these facts and circumstances we cannot escape the conclusion that the specific act in question might well and reasonably have affected the apprehensions of the defendant for his life and safety at the time of the homicide, and evidence thereof might have materially assisted the jury upon this point, and upon the question of aggression. This one circumstance might have led the jury to reach a different conclusion. In arriving at this result we also have not overlooked the fact that before a verdict was reached the trial court saw fit to call in the jury and give them what is commonly referred to by the bar as the "shotgun instruction," whereby the jury was urged to make every effort to arrive at a verdict. The question of defendant's guilt seems to have been considered by the jury as a close one, and for the reasons stated the defendant should be granted a new trial.

In the opinions of the territorial court (United States v. Densmore, 12 N. M. 99, 75 Pac. 31, and Territory v. Lobato, 17 N. M. 666, 134 Pac. 222, L. R. A.

1917A, 1226) relied on by the Attorney General, it does not appear that information concerning the specific acts of violence sought to be proved had in any wise been communicated to the defendant; nor does the rule which we have announced conflict with Territory v. Trapp, 16 N. M. 700, 120 Pac. 702, so long as the rule is limited to the evidence of specific acts of violence of which the defendant had been informed at the time of the homicide, and we do so limit the application of the rule. To give the rule application to evidence of specific acts of violence on the part of the deceased, which had not been communicated to the defendant, would be to overrule the territorial cases cited, something we are not called upon to do in this case.

Defendant also complains of the refusal of the court to admit the court records of the indictment, trial, conviction, and sentence of the deceased for an assault with attempt to kill, and assault with a deadly weapon, to wit, a pistol, upon one Jesse Cadera at the April, 1918, term of the Dona Ana court, and similar records of the court covering a plea of guilty and sentence of the deceased upon a charge of assault to kill one Nicolas Van Gass, defendant himself being permitted to testify that he had information concerning such assaults prior to the homicide. Counsel for defendant and the Attorney General both treat this offered evidence as being in the same category as the evidence already discussed tending to show particular acts of violence on the part of the deceased, and, assuming it so to be, what we have already said applies with equal force to this offer of evidence. Texas, as we have already seen, holds evidence of particular acts of violence on the part of the deceased admissible, and in the case of Brunet v. State, 12 Tex. App. 521, held record evidence of the conviction of the deceased for manslaughter admissible. See, also, Johnson v. State, 28 Tex. App. 17, 11 S. W. 667. Alabama, on the contrary, holds proof of particular acts inadmissible, and

in the case of Dupree v. State, 33 Ala. 380, 73 Am. Dec. 422, holds that proof that deceased was a convict escaped from the Georgia Penitentiary is inadmissible. The difference between the two states in their ruling seems to rest on no other distinction than the different theories adopted by the two jurisdictions governing the admissibility of particular acts.

[2] The witness Johnson was permitted to testify, over the objection of the defendant, that, on the afternoon or evening preceding the day of the homicide, he had a conversation with the deceased, wherein the latter expressed himself as being in an apologetic frame of mind toward the accused. This is assigned as error. The state contends that the evidence was admissible as bearing on the issue of aggression—the state of mind on the part of the deceased at the time of the homicide. This conversation was not in the presence of the accused, nor was it communicated to him. Inasmuch as it has been held that uncommunicated threats by the deceased are admissible (Territory v. Hall, 10 N. M. 545, 62 Pac. 1083) as bearing on this issue, it would seem, at first glance, that this evidence would likewise, and on the same theory, be admissible. In fact, it has been so held by the Court of Criminal Appeals of Texas. Howe v. State, 77 Tex. Cr. R. 108, 177 S. W. 497. We believe, however, that the Texas court overlooked the principle excluding self-serving declarations. Bearing in mind that the particular issue then before the court was whether the deceased or the defendant was the aggressor, we think it will be conceded that the defendant would not have been permitted to introduce a declaration of his own, not a part of the res gestae, tending to show a state of mind incompatible with aggression. Such a declaration would be self-serving and inadmissible. Hopkins v. State, 9 Okl. Cr. 104, 130 Pac. 1101, Ann, Cas. 1915B, 736; Colquit v. State, 107 Tenn. 381, 64 S. W. 713; Newcomb v. State, 37 Miss. 383-399; Red v. State, 39 Tex. Cr. R. 414, 46 S. W. 408; Fields v. State, 46 Fla. 84, 35 South. 185; State v. Van Zant, 71 Mo. 541;

State v. Atchley, 186 Mo. 174, 84 S. W. 984; State v. Raymo, 76 Vt. 430, 57 Atl. 993. If such self-serving declarations by one party to the affray are not to be admitted on this issue, we see no reason why those of other should not likewise be excluded. It seems that the fact that the declarant is dead does not change the rule. 4 Chamberlayne on Evidence, § 2734, p. 3760.

Dean Wigmore (section 1732, Wig. Ev.) argues most logically that an accused, against whom his threats and expressions of ill feeling directed toward the deceased are admissible, and who, under the law, is presumed to be innocent, should be permitted to show prior expression in his favor, such as expressions of good feeling toward the deceased, as having an equal bearing on the state of mind of the accused at the time of the homicide and upon the issue of who was the aggressor, and that it is begging the question to hold such favorable expression and declaration inadmissible on the ground that the declarant was probably purposely making evidence for himself; but the cases which he cites show an almost unanimous exclusion of such evidence, and convince us that long experience has demonstrated that human nature is not sufficiently strong in withstanding temptation to justify the courts in relying on extrajudicial statements made in the interest of the declarant. This unquestionably accounts for the administrative rule of exclusion, long adhered to by the courts, from which we hesitate to depart. The same reason applies to one party to the affray as much as to the other; and if the statements of an accused in his own interest, not a part of the res gestae, are to be excluded, so should we exclude such self-serving declarations of the deceased. Jackson v. State, 52 Ala. 305. It follows that the court erred in admitting Johnson's testimony.

The defendant offered to prove by the witness Mrs. Harm that, about the time of the conversation with Johnson, or probably a little later, she saw the deceased in conversation with a neighbor, and violently

gesticulating toward defendant's premises. Defendant says this testimony was designed to rebut the testimony of the witness Johnson. Doubtless the court hearing the evidence was of the opinion that these acts of the deceased were not sufficiently connected with the defendant to render them relevant, and we should hesitate to say that he was wrong. Be that as it may, however, the Johnson testimony having been held inadmissible, there will be no necessity to rebut it on another trial.

Defendant complains of the refusal of the court to give the jury a requested instruction, and of the giving of instruction No. 19. We have examined the instructions given as a whole, and are of the opinion that defendant is without ground of complaint in this particular.

The remarks of the district attorney in arguing the case to the jury, to which exception is taken for the first time in the motion for a new trial, are not incorporated in the bill of exceptions; nor was objection made or exception taken at the time they were uttered. For this reason we are giving the point no consideration. Neither are we considering defendant's contention that the court erred in not granting a new trial on account of newly discovered evidence, since the case must go back for new trial because of the errors already noticed, and the defendant will have an opportunity to take advantage of his present knowledge of the existence of this evidence.

For the reasons stated the judgment is reversed, and the cause is remanded, with instructions to award the defendant a new trial; and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.