526 P.2d 194

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Ricardo A. ALDERETTE, Defendant-Appellant.**

**No. 1366.**

Court of Appeals of New Mexico.

July 3, 1974.

Rehearing Denied July 26, 1974.

Certiorari Denied Sept. 4, 1974.

Sutin, J., dissented and filed opinion.

Louis G. Stewart, Jr., Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Special Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

Joe Pat Romero was shot and died from his wounds. Convicted of murder in the second degree, defendant appeals. Section 40A–2–1, N.M.S.A.1953 (2d Repl.Vol. 6). The issues concern: (1) a fair and impartial jury; (2) evidence of the character of the deceased in the State's case-in-chief; (3) exclusion of evidence concerning the character of deceased; (4) questions concerning threats; and (5) cumulative error.

*Fair and impartial jury.*

There are three parts to the claim that defendant was denied a fair and impartial jury.

The first part concerns a conversation Assistant District Attorney Schiff had with some members of the jury panel prior to impaneling the jury. He testified the discussion was about grand jury procedure, juror concern with a lesser included offense in a prior trial not involving defendant and defense tactics in the prior trial. His testimony is not contradicted. He was not the prosecutor in this case.

The trial court informed the jury panel that the conversation between Schiff and some members of the panel was an impropriety and asked that during voir dire the panel members who engaged in the conversation identify themselves. This was done. Approximately 12 prospective jurors identified themselves as having participated in or overheard some of the conversation with Schiff. All answered that nothing in the conversation would influence their verdict and that they could be impartial if selected as a juror. Four were ultimately selected as jurors and one as the alternate juror.

Defendant's claim is that unauthorized contact with jurors is presumptively prejudicial. We agree. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App. 1967). The foregoing not only overcame the presumption of prejudice, State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App. 1969), cert. denied, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 279 (1970), it affirmatively established an absence of prejudice. State v. Brugger, 84 N.M. 135, 500 P.2d 420 (Ct.App.1972).

The second part concerns a conversation, during trial, between the wife of a juror and a prosecution witness. Later, the wife had lunch with her juror husband. On the basis of these two facts, defendant raises a specter of improper influence upon the juror. The husband testified there had been no conversation with his wife about any witness or of any matter pertaining to the trial. This second part fails because of lack of a factual basis for the claim of improper communication with a juror.

The third part concerns the juror Gaines. During voir dire she indicated that she knew Ivan Smith, who had been identified as a witness. Upon questioning by the trial court, Mrs. Gaines stated that her acquaintanceship with Smith would not affect her ability to be completely fair and impartial with regard to Smith's testimony. During questioning by defense counsel, Mrs. Gaines stated that she thought she would trust Smith and "would think that what he said was true."

Defendant challenged Mrs. Gaines for cause, relying on her answers on voir dire. In denying the motion, the trial court pointed out that Mrs. Gaines had not said she would believe Smith more than anyone else. "She just believed him to be truthful, but that she would be fair and impartial." In ruling, the trial court also pointed out that it had been indicated that Smith's testimony did not go to the substance of the charge against defendant.

In contending denial of the challenge for cause was error, defendant misstates Mrs. Gaines' testimony. She did not state she would give more weight to the testimony of Smith than to others. She did state she

believed Smith would be truthful. The question is whether the trial court abused its discretion in failing to excuse Mrs. Gaines as a juror in the light of this answer. See State v. Valdez, 83 N.M. 632, 495 P.2d 1079 (Ct.App.1972).

We do not have a fact situation such as in Mares v. State, 83 N.M. 225, 490 P.2d 667 (1971). Ivan Smith, a police officer, testified that upon notification of the shooting he went to the scene; that other officers had preceded him to the scene (Michael's Lounge) and roped off the area; that he took three photographs of the scene (which were admitted without objection); that after taking the photographs, he assisted in taking measurements and preparing a diagram; that in doing this he picked up some cigarettes, a cigarette lighter and a dollar bill from the floor. Smith testified that other than the above he did no investigative work, talked to no witnesses and did no interviewing.

Smith's testimony went no further than to depict the scene where the shooting occurred, and this scene was not disputed. If Mrs. Gaines believed Smith was truthful in photogaphing and diagraming the scene and in picking up some items from the floor, so did the other jurors. We cannot say that Mrs. Gaines' opinion that Smith would be truthful in his testimony requires us to hold, as a matter of law, that the trial court erred in denying defendant's challenge for cause. Our view is that if error did occur in denying the challenge, the error was harmless. See State v. Deats, 82 N.M. 711, 487 P.2d 139 (Ct.App. 1971).

*Evidence of the character of the deceased in State's case-in-chief.*

The defense made an opening statement to the jury prior to the reception of any evidence. This statement included remarks that there had been difficulties between deceased and defendant and some of those difficulties led up to the fatal shooting. "We will present witnesses to show that Mr. Joe Romero, the deceased, was a person of violent character."

During cross-examination of the State's witness, Donna Wasilowski, the defense asked if, in April, 1972, the witness had seen the defendant when his eyes or face appeared to be wounded. The witness did not remember.

Without objection on defendant's part, the State introduced evidence that: "Joe Romero was the friendliest man I ever met in my life." Without objection, the State introduced evidence of a fight between deceased and defendant in April, 1972 outside a cocktail lounge referred to as La Anita. Also without objection, the State introduced evidence of a fight between defendant and a friend of deceased in June, 1972 outside the Penguin Lounge.

In its case-in-chief, the State asked a witness whether other than the La Anita incident, he had ever seen Joe Romero get into a fight. The witness answered in the negative. Defendant objected on the basis "that question is not in issue at this point." The trial court overruled the objection on the basis that the question was relevant.

The foregoing shows the State introduced evidence, as part of its case-in-chief, concerning the asserted nonviolent disposition of the deceased. Defendant asserts this was error. The rule, stated in State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969), is that evidence of the good reputation of decedent is not admissible in the first instance. However, "when defendant in his defense undertook to question decedent's character in any respect, the State on rebuttal could then offer proof of reputation that would cast doubt that decedent would have acted in the manner claimed." See State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969). Although not applicable to this case, compare evidence rule 404 compiled as § 20-4-404, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973).

We do not consider whether defendant had opened up the question of deceased's character by his opening statement and his cross-examination of Wasilowski. Rather, we consider the fact that the defense case

introduced detailed evidence to the effect that deceased had a violent temper.

■ If evidence of the deceased's character was improperly admitted in the State's case-in-chief, the error was in anticipating evidence which the defense, in the opening statement, had declared would be introduced. When the defense proceeded to do so, any error in admission of character evidence in the case-in-chief was harmless. See State v. Barnett, 85 N.M. 301, 512 P.2d 61 (1973); State v. Cummings, 63 N.M. 337, 319 P.2d 946 (1957); State v. Thurman, 84 N.M. 5, 498 P.2d 697 (Ct.App.1972); State v. Vasquez, 83 N.M. 388, 492 P.2d 1005 (Ct.App.1971); State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct.App. 1971). State v. Alberts, 80 N.M. 472, 457 P.2d 991 (Ct.App.1969) is distinguishable because there the defense did not present character evidence as a part of the defense case.

*Exclusion of evidence concerning the character of deceased.*

At trial, defendant attempted to introduce a "booking slip" through an Albuquerque police officer. This slip indicates a Joe Pat Romero was arrested in 1966 after being identified as the person striking another person across the face with a gun.

■ Defendant asserts the trial court erred in excluding the booking slip. It did not. There was no evidence that the Joe Pat Romero named on the slip was the deceased. The trial court stated defendant could present additional material on the question of identity and on the question of whether the Romero named on the booking slip "in fact did what he was charged with doing." The matter was not raised again during trial.

Defendant's motion for a new trial again asserted error in excluding evidence concerning the asserted violent character of deceased. An affidavit in support of this motion refers to a subpoena duces tecum served on the custodian of records of the Albuquerque Police Department in advance

of trial; that the response to the subpoena was only the booking slip; that a copy of the offense report with which the booking slip was concerned was not produced until more than a month after the trial concluded.

Defendant claimed the police department either intentionally or negligently withheld the offense report from defendant. He contended that the offense report would have been admissible at trial and, on the basis that it had been withheld, he should be granted a new trial.

Again, there was no showing that the Joe Pat Romero named in the offense report was the same person as deceased. However, this contention was not raised.

The trial court considered the motion for a new trial on the basis of whether the offense report would have been admissible had it been available at trial.

The offense report is concerned with an asserted specific violent act of deceased. Defendant asserts such evidence is admissible under State v. Ardoin, 28 N.M. 641, 216 P. 1048 (1923). In approving the admission of such evidence, *Ardoin,* supra, limited the rule to "evidence of specific acts of violence of which the defendant had been informed at the time of the homicide." There being no evidence that defendant had any knowledge of the event referred to in the offense report, that report was not admissible under the decision in *Ardoin,* supra. Compare State v. McFerran, supra.

Our concern, however, is with the general discussion in *Ardoin,* supra. That discussion is to the effect that evidence of specific violent acts of a deceased should be admissible if it "would legitimately and reasonably * * * throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray." This language is consistent with evidence rule § 20–4–404(a)(2), supra, which is concerned with evidence of pertinent character traits of the victim. The advisory committee's note to proposed Rules of Evidence for the United States Courts

and Magistrates, in discussing the equivalent to § 20–4–404(a)(2), supra, states: "character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character." Compare State v. Pace, supra.

■ Evidence of a specific violent act is evidence concerning a trait of violence which may throw light on the question of aggression. In our opinion, the asserted specific violent act referred to in the offense report was not to be excluded solely because it was not shown that defendant knew of that act. It does not follow, however, that evidence of a specific violent act of a deceased is automatically admissible. Such evidence is directed to a collateral issue and the extent that evidence on a collateral issue is to be permitted is within the trial court's discretion. State v. Moraga, 82 N.M. 750, 487 P.2d 178 (Ct.App.1971).

The trial court pointed out that the offense report "was not only hearsay, but much of it was hearsay on hearsay." The offense report does contain a statement bearing the signature of a "Joe Romero." If it be assumed that this was in fact a statement made by deceased, the statement is largely exculpatory.

■ The trial court ruled that defendant had not been prejudiced in the failure of the police department to make the offense report available. Defendant claims prejudice in not being able to introduce the offense report at trial. Its admission was discretionary with the trial court, and nothing indicates its exclusion would have been an abuse of discretion.

■ Defendant also claims prejudice in that if the report had been made available he would have obtained leads to other witnesses. Defendant made no attempt to show that such witnesses would be available at a new trial. Even if available, their evidence would have been cumulative. Since the report involved a collateral matter, we do not agree that defendant was prejudiced.

The trial court did not err in denying a new trial because of the delay in making the offense report available to defendant.

*Questions concerning threats.*

Cross-examining defendant, the State twice asked if he had made certain threats. Defendant asserts the questions were reversible error because asked in bad faith.

■ Defendant denied that in the presence of Manuel Presciado he stated: " 'I'm going to get even with him [deceased].' " Defendant did not object to the question when it was asked. The claim of bad faith in asking this question was first raised at a motion for mistrial made 130 pages later in the transcript. The objection was not timely and, thus, raised no issue of bad faith. State v. Holden, 45 N.M. 147, 113 P.2d 171 (1941); see State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970).

Defendant denied that he had ever made any threat against the witness, Donna Wasilowski. His counsel promptly objected and moved for a mistrial. At a subsequent hearing, defendant claimed that the question was asked in bad faith on the basis that defense counsel, interviewing Wasilowski in the presence of the assistant district attorney, had been informed by Wasilowski that no threat had been made. The response of the assistant district attorney was that Wasilowski's mother had informed him of threats and the question was asked on that basis.

The trial court pointed out that after defendant's negative answer the matter of threats was not further pursued, ruled there was no prejudice and denied the motion for a mistrial. The effect was a denial of the claim that the question was asked in bad faith. Defendant renewed the mistrial claim at the close of the evidence, pointing out that Wasilowski had testified as a rebuttal witness but was not asked about any threat. The response of the assistant district attorney was that since the defense had claimed prejudice from asking defendant about a threat, Wasilowski was not questioned about the threat on rebuttal for fear of creating further prejudice.

All we have are conflicting statements of counsel. These conflicting statements are insufficient for us to hold, as a matter of law, that the question about threats to Wasilowski was asked in bad faith. State v. Garcia, 80 N.M. 247, 453 P.2d 767 (Ct.App.1969).

*Cumulative error.*

Defendant claims a new trial should be granted because of the asserted prior errors, previously discussed herein, and a violation of the admonition to witnesses not to discuss the case. None of the contentions previously discussed were reversible error. They do not support the claim of cumulative error. State v. Polsky, 82 N.M. 393, 482 P.2d 257 (Ct.App.1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 688, 30 L.Ed. 2d 662 (1972). Assuming a violation of the admonition by Officer Golden, there is nothing showing the trial court abused its discretion in denying defendant's various motions based on the violation. State v. Kijowski, 85 N.M. 549, 514 P.2d 306 (Ct. App.1973).

The judgment and sentence is affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, Judge (dissenting).

SUTIN, Judge (dissenting).

I respectfully dissent.

A. *Defendant had a fair and impartial jury.*

(1) *Defendant's challenge of prospective jury panel not subject to review*

The majority opinion misstates the law. The events which occurred between an assistant district attorney and some members of the prospective jury panel took place *before* a jury was selected, impanelled and sworn to try the case; that is, *before* the trial commenced. A trial begins when members of the jury are called into the box for examination as to their qualifications. State v. Snow, 84 N.M. 399, 503 P. 2d 1177 (Ct.App.1972). See, Rule 40 of the Rules of Criminal Procedure [§ 41–23–40, N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.)]. It has been held that voir dire examination is not part of the trial. Nix v. State, 240 Ind. 392, 166 N.E.2d 326 (1960).

State v. Gutierrez, 78 N.M. 529, 531, 433 P.2d 508 (Ct.App.1967) is not applicable. It holds that any unauthorized communications with a juror *during* trial about a matter pending before the jury is presumptively prejudicial.

Defendant moved to strike the entire prospective jury panel and particularly those who overheard the conversation *after* the jury had been selected, impanelled and sworn to try the case. The motion was denied. It was made too late in the day. Defendant waived his right to challenge the prospective jurors. Section 19–1–16, N.M.S.A.1953 (Repl. Vol. 4).

Our courts of review have not yet determined whether unauthorized communication *before trial with prospective jurors* is presumptively prejudicial. To present the matter for review, defendant must make his challenge before the selection of the jury begins. Section 19–1–16, supra.

Challenge of the prospective jury panel is not subject to review.

(2) *Challenge of juror Gaines for cause not meritorious.*

Mrs. Gaines was subject to voir dire examination. After court and counsel adjourned to chambers, defendant did not challenge Mrs. Gaines and she was accepted. Defendant challenged juror Gaines for cause after the jury had been impanelled and sworn to try the case.

Rule 39(c) of the Rules of Criminal Procedure [§ 41–23–39(c), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.)] provides:

The court shall permit the parties to a case to express in the record of the trial any challenge to a juror for good cause. The court shall rule upon the challenge and may excuse any juror for good cause.

Unfortunately, the rule does not indicate the time the challenge should be made.

The Judge's Memorandum of Selection of the Jury shows that defendant was allowed 13 peremptory challenges instead of 12 as allowed by Rule 39(d)(1) of the Rules of Criminal Procedure [§ 41–23–39(d)(1), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.)]. Having exercised 13 peremptory challenges, the defendant sought the 14th challenge for *cause* after having accepted the juror because defendant had no more peremptory challenges.

Rule 2.5 of the A.B.A. Standards Relating to Trial by Jury, entitled "Challenges for Cause," concludes with this statement:

A challenge to an individual juror should be made before he is sworn to try the case, but the judge may permit it to be made after he is sworn *but before jeopardy has attached.* [Emphasis added].

Unless the Supreme Court indicates otherwise, we should adopt this rule as the time in which a challenge for cause must be made. The challenge was made in time.

In the commentary to Rule 2.5 the various grounds of challenge for cause are set forth. The grounds stated by defendant do not come within any one of the grounds mentioned.

Defendant's challenge of juror Gaines for cause was not meritorious.

Defendant had a fair and impartial jury.

B. *Defendant was entitled to a new trial.*

(1) *Admission of evidence of peaceful reputation of deceased not subject to review*

Defendant states that "During the testimony of several witnesses for the prosecution the state elicited evidence to the effect that the deceased Joe Pat Romero was a peaceful, non-violent person." No reference is made to the names of witnesses nor to their testimony. This point is not subject to review.

(a) *The majority opinion errs on the effect of opening statements.*

The majority opinion reviewed the evidence. Without any authority, it makes the following erroneous statement:

If evidence of the deceased's character was improperly admitted in the State's case-in-chief, *the error was in anticipating evidence* which the defense, *in the opening statement,* had declared would be introduced. When the defense proceeded to do so, any error in admission of character evidence in the case-in-chief was harmless.

[Emphasis added].

Rule 40(b) of the Rules of Criminal Procedure [§ 41–23–40(b), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.)] states:

The state may make an opening statement. The defense may then make an opening statement or may reserve such opening statement until after the conclusion of the state's case.

The majority opinion concludes that if the defense makes an opening statement, it is harmless error for the State to introduce evidence which is prejudicial and reversible error. This would constitute an unequivocal warning to all defense attorneys to reserve the opening statement until after the conclusion of the State's case or waive it.

"The purpose of an opening statement is primarily to inform the jury of the nature of the case and the nature of the defense and just how the evidence as presented fits into the charges filed and the defense made. . . . The opening statement is not evidence and the jury is so instructed." Buise v. State, 281 N.E.2d 93, 96 (Ind. 1972). It has no binding force or effect. White v. State, 11 Md.App. 423, 274 A.2d 671, 675 (1971); Clarke v. State, 238 Md. 11, 207 A.2d 456 (1965). It is merely for the assistance of the jury. State v. Campbell, 210 Kan. 265, 500 P.2d 21, 32 (1972).

If the evidence is reviewed, the court committed reversible error in permitting the State, in its case-in-chief, to admit evi-

dence of the good character of the decedent. State v. Alberts, 80 N.M. 472, 457 P.2d 991 (Ct.App.1969); State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969); State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969). To hold that it is harmless error is a convenient method of affirming a conviction. Ipse dixit statements of the law have caused confusion and explanation through the course of New Mexico judicial history.

(2) *Rejection of evidence of violent character of decedent was proper at time of trial.*

The majority opinion adequately explained why the "booking slip" dated May 14, 1966 on aggravated battery committed by deceased was not admissible in evidence. On April 2, 1973, almost three months before trial, defendant, by motion, sought discovery of papers and documents "which the State intends to introduce in evidence at the trial." Defendant did not request any matters "which are material to the preparation of the defense." Section 41–23–27(a)(5), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.). The record discloses a failure to respond to defendant's motion, and a failure of the defendant to seek relief on his motion. Rule 27(e), supra.

The trial commenced June 27, 1973. The police department produced several "booking slips" involving a Joe Pat Romero. Defendant claims a subpoena was issued for all police reports, documents and records pertaining to the "booking slips," but the subpoena does not appear of record.

However, the record shows that the police officer was requested by the court and by defense counsel to search the records for the police offense report regarding the arrest of the deceased for aggravated battery as quickly as possible. The trial court gave the police officer his telephone number requesting a call. The record is silent on any report by the police department. The documents were obtained by a later subpoena on motion for a new trial.

By affidavit on motion for a new trial, defense counsel stated that on June 22, 1973, a subpoena duces tecum was issued to the Custodian of the Records, Albuquerque Police Department, requesting that he produce all information pertaining to offenses committed by Joe Pat Romero. At trial, he produced only the "booking slip."

These matters should have been seriously considered by the court on motion for a new trial.

The record does disclose negligence on the part of the police department which seriously affected the defense.

(3) *The trial court abused its discretion in denying defendant's motion for a new trial.*

At the hearing on defendant's motion for a new trial, the defendant produced newly discovered evidence. By subpoena, the police department produced the "booking slip" and a police report and statements attached thereto which disclose evidence that on May 14, 1966, deceased committed an aggravated battery with a gun against one Billy Tutor. The trial court admitted the documents in evidence as follows:

THE COURT: All right, we will admit this exhibit A to the motion which is the report on Joe Pat Romero.

This is an admission by the court that Joe Pat Romero was the deceased. The trial court held that the documents would not have been admissible at the time of trial and denied defendant's motion for a new trial.

The written statement of Billy Tutor, the victim, states that this statement made to a detective can be used in a court of law, if necessary. It states in part:

Then this fellow [deceased] gave [sic] at us with this gun and the next thing I knew was that this fellow hit me on the side of the head with the pistol.

The statement of Joe Pat Romero, now deceased, said in part:

This girl had a knife and this is when I pulled the gun out. I got the gun from

under the front seat. . . . I don't remember hitting this guy with the gun but I do remember chasing them.

The above statements are evidence of specific acts of violence of the deceased. The question is whether this specific act of violence might materially assist the jury in deciding who was the aggressor and what the reasonable apprehensions of the defendant were for his life and liberty.

In State v. Ardoin, 28 N.M. 641, 216 P. 1048 (1923), the specific act of violence also occurred six years before the homicide and was not connected with the defendant. Other evidence of deceased's reputation as being a quarrelsome and dangerous man was introduced. A shot gun instruction was given the jury. "The question of defendant's guilt seems to have been considered by the jury as a close one, and for the reasons stated the defendant should be granted a new trial." [p. 648, 216 P. p. 1050].

The facts presented by the defense in the instant case are quite similar. At 5:45 p. m., the court instructed the jury and final arguments were made. The jury returned a verdict at 12:05 a. m.

In State v. Gomez, 75 N.M. 545, 408 P. 2d 48 (1965), Justice Moise said:

. . . [T]he very real possibility of a miscarriage of justice which could be overcome if all the pertinent proof is properly presented and considered, requires a reversal. . . .

. . . . . .

. . . We are responsible to see that a person convicted of crime shall have a fair trial with a proper defense, and that no conviction shall stand because of the absence of either. . . .

A review of the facts in this case and a review of additional authority would be to no avail.

The defendant was a man of good character and reputation, free of any prior criminal convictions, 32 years of age at the time of trial. He had a general contractor's license. He was a sales representative of the Magnoleum Chemical Company, Dallas, Texas. He was sentenced ten to fifty years in the penitentiary. This dissent does not intend to indicate the defendant is not guilty. It means that a new trial should be granted to assist the jury with a specific act of violence committed by the deceased on the person of another.

The trial court "may grant a new trial if required in the interest of justice." Section 41–23–45(a), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.). The interest of justice demanded a new trial. The failure to grant a new trial under the record in this case is an abuse of discretion. The majority feeling otherwise, I dissent.