**STATE of Missouri, Respondent,**

v.

**Scott MARVEL, Appellant.**

**No. 15533.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 29, 1988.

Sharon Ayers, Asst. Public Defender, Poplar Bluff, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Scott Marvel ("defendant") guilty of the class C felony of tampering in

the first degree, § 569.080, RSMo 1986. The trial court, having found defendant to be a prior offender,[1] § 558.016.2, RSMo 1986, sentenced him to three years' imprisonment.

Defendant appeals, briefing three points: (1) the trial court erred in receiving evidence that defendant appeared intoxicated when arrested, (2) the trial court erred in allowing the arresting officer to testify as to statements made by defendant to a companion at the time of arrest, and (3) the evidence was insufficient to support the verdict. We address the latter point first.

In that point defendant maintains the trial court wrongly denied his motion for judgment of acquittal at the close of the State's evidence, and his subsequent motion for judgment of acquittal at the close of all the evidence. After defendant's motion for judgment of acquittal at the close of the State's evidence was denied, defendant presented evidence. By doing so defendant waived any error with respect to the denial of such motion. *State v. Green*, 476 S.W.2d 567, 569[2] (Mo.1972); *State v. Thomas*, 452 S.W.2d 160, 162[4] (Mo.1970). Consequently, the sufficiency of the evidence to support the verdict will be determined upon the basis of all the evidence. *State v. Campbell*, 655 S.W.2d 96, 97 (Mo.App.1983); *State v. Wood*, 553 S.W.2d 333, 334[3] (Mo.App.1977). On that issue we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

Bill Taylor, sales manager at MidWest Motors in Dexter, arrived there about 7:45 a.m., August 25, 1987, driving his red and white Ford pickup. He parked it and entered the office. Some 15 minutes later Benjamin Rushing, an employee of MidWest Motors, arrived and saw two people standing beside Taylor's pickup. Rushing entered the office and asked Taylor if the duo was with him. Taylor replied, "No," whereupon Rushing ran outside, followed by Taylor. Rushing saw the pair walking away in a ditch. He shouted at them, and they "started scuffling up the hill to get to the other side of the ditch, and they took off running." Asked what they were wearing, Rushing responded, "As I recall, one of them was wearing a gray or a blue T-shirt, and the other one was wearing yellow." At trial, Rushing identified defendant as one of the individuals.

Taylor did not see the fleeing duo. He opened the door to his pickup, observing "stuff pulled out of the glove box." Additionally, said Taylor, "[M]y cassette recorder had been grabbed, and it looked like— tried to jerk it out of there and broke the lid." Taylor added, "I checked right then, and I noticed my two gospel tapes were gone." An air gauge was also missing.

Taylor immediately telephoned the Dexter police department. Detective Granville Gregory responded to the call, and about a half hour after the incident Gregory observed defendant and Scott Moore, a "16–year–old juvenile," on foot about three-fourths of a mile from MidWest Motors. Both were shirtless; defendant was carrying a yellow T-shirt and Moore was carrying a blue shirt.

---

1. The copy of the judgment in the legal file, Rule 30.04(a), Missouri Rules of Criminal Procedure (19th ed. 1988), recites that the trial court found beyond a reasonable doubt that defendant was a *persistent* offender, § 558.016.3, RSMo 1986. However, the trial court's verbal findings in the transcript and the trial court's written findings on the docket sheet show that defendant was determined to be a *prior* offender. As defendant raises no issue about the discrepancy, we leave the matter as we find it.

Gregory, who was in his "duty car," stopped and asked defendant where he and Moore were going. At this point in Gregory's testimony the following exchange occurred, which supplies the basis for defendant's first assignment of error (to be discussed later).

"Q. Go ahead, sir.

A. The Defendant appeared intoxicated.

Q. Why do you say that?

A. He smelled of intoxicants—

Ms. Ayers:[2] Your Honor, I—

The Witness: —speech slurred.

Ms. Ayers: —object. This is irrelevant. My client has not been charged with any crime relating to being intoxicated.

The Court: Mr. Welborn.[3]

Mr. Welborn: Well, Judge, he said that he appeared to be intoxicated. I was just asking him what led him to that conclusion.

The Court: Well, what I intended to ask you was, what do you say as to her objection that it—that it is not relevant to this case?

Mr. Welborn: Well, it certainly indicates that they they've been up, Judge, and it indicates that—part of his condition as to what his condition was.

The Court: The objection is overruled.

By Mr. Welborn:

Q. Go ahead.... Just tell the jury briefly what it was that led you to that conclusion?

A. Okay. His speech was very slurred. He was unsteady, eyes were really bloodshot. His clothing was dirty, his jeans; his trousers were dirty on both—on both people."

Gregory arrested defendant and Moore, placing defendant in the front seat of Gregory's vehicle and Moore in the back seat. Describing what occurred en route to the police station, Gregory gave the following testimony, which supplies the basis for defendant's second assignment of error (also discussed later).

"Q. ... Did Mr. Marvel make any comments on the way to the police station?

A. Not to me.

Q. All right. To whom did he make the comments?

A. He kept turning around in the seat talking to the juvenile.

Q. All right. What did—

Ms. Ayers: Your Honor, I object. This is hearsay.

Mr. Welborn: No—I'm sorry, Your Honor.

The Court: The objection is overruled.

By Mr. Welborn:

Q. What did he tell the Defendant [sic] on the way back to the police station?

A. It was basically not to give me any information, not to say anything, keep his mouth shut."

Scott Moore, called as a witness by the State, testified he and defendant went to MidWest Motors on the morning of August 25, 1987, and defendant "got in this red and white truck." Shortly thereafter, said Moore, Rushing arrived and, upon seeing him, defendant and Moore ran through a "gully," eventually encountering Detective Gregory. Moore recalled he (Moore) was wearing a dark shirt. Asked what color shirt defendant was wearing, Moore answered, "Yellow, or some color."

The amended information averred defendant committed the tampering offense in that he knowingly and without the consent of the owner defaced a motor-propelled vehicle, i.e., Taylor's pickup.

Defendant, insisting the evidence was insufficient to support the conviction, asserts that the fact an accused may have been present at the scene of a crime or may have possessed the opportunity to commit it is not circumstantial evidence sufficient to justify conviction. While we do not dispute that declaration as an abstract statement of law, it does not aid defendant here.

---

2. Assistant Public Defender Sharon Ayers, who represented defendant at trial.

3. Prosecuting Attorney Briney Welborn of Stoddard County.

Taylor's testimony established that the damage to the cassette recorder in his pickup occurred during the 15–minute interval between his arrival at MidWest Motors and his inspection of the vehicle immediately after Rushing reported the presence of the two strangers. Rushing identified defendant at trial as one of the two, and Moore's testimony placed defendant inside Taylor's pickup shortly before Moore and defendant fled in the ditch. Rushing's testimony about the color of the shirts worn by the suspects matched Detective Gregory's testimony regarding the shirts Moore and defendant were carrying when he confronted them a half hour later, three-fourths of a mile from MidWest Motors.

In *State v. Clemmons*, 579 S.W.2d 682 (Mo.App.1979), the accused was convicted of tampering with a motor vehicle, § 560.175.1, RSMo 1969. He argued on appeal that the evidence was insufficient to support the conviction. The vehicle owner testified he had washed it and cleaned its windows the day of the crime. He put a book inside the vehicle about 10:30 p.m., and saw nothing amiss. Twenty minutes later he returned to the vehicle and saw the vent window on the driver's side pointed outward. Some books and a transistor radio were missing. Fingerprints outside and inside the vent window were identified as those of the accused. The appellate court held the evidence sufficient to support a finding that the tampering had been done during the 20 minutes between the placement of the book in the vehicle and the discovery of the damage and theft. *Id.* at 684–85[5]. The court further held that the accused's fingerprints outside and inside the vehicle were sufficient to support a finding that he was the culprit. *Id.*

■ The evidence in the instant case is obviously stronger than *Clemmons*, in that here there was eyewitness testimony by Moore that defendant was inside Taylor's pickup during the 15–minute period when the damage was done. Furthermore, defendant and Moore fled when they were observed by Rushing. An accused's flight from a crime scene is admissible to show a consciousness of guilt contrary to any theory of innocence. *State v. Rodden*, 728 S.W.2d 212, 219[2] (Mo. banc 1987). Additionally, as explained more fully later in our discussion of defendant's second point, his admonition to Moore to keep his mouth shut and to give Gregory no information was admissible as a statement by defendant against his interest, from which the jury could infer a consciousness of guilt. We therefore find the evidence sufficient to support the verdict. Defendant's third point is denied.

We next consider defendant's second assignment of error, which complains about the receipt in evidence of Detective Gregory's testimony that defendant told Moore to keep his mouth shut during the journey to the police station.[4] Defendant proclaims such testimony was inadmissible hearsay and, if tendered as a declaration against penal interest, was inadmissible in a criminal case. Defendant cites two cases in support of the point: *State v. Tyler*, 676 S.W.2d 922 (Mo.App.1984), and *State v. Ivicsics*, 604 S.W.2d 773 (Mo.App.1980). Neither is applicable, as each concerned the testimony of a witness regarding an out-of-court statement made by a *third party*, not by the *accused*. *Tyler*, 676 S.W.2d at 924–26; *Ivicsics*, 604 S.W.2d at 779–80.

■ An out-of-court statement by an accused is admissible as an exception to the rule against hearsay if it constitutes an admission against interest. *State v. Patterson*, 516 S.W.2d 571, 573[1] (Mo.App. 1974). Any statement evincing a consciousness of guilt on the part of an accused is an admission against interest. *Id.* at 573[3].

Consistent with those rules it has been held that testimony by a witness that an

---

4. In the excerpt from Detective Gregory's testimony regarding the incident, the phraseology of the final question implies it was *Moore* who told *defendant* to keep his mouth shut and to give Gregory no information. Later in the trial, however, Gregory testified about the incident in rebuttal, and it is clear from that testimony (quoted *infra* in our discussion of defendant's first point) that it was defendant who was admonishing Moore to keep his mouth shut and to give Gregory no information.

accused, after his arrest, told the witness "not to tell anything," and that "nobody better testify against [the accused], he would throw five gallons of gasoline on them and touch a match to it," was admissible as statements and admissions by the accused against his interest. *State v. Koch*, 322 Mo. 106, 16 S.W.2d 205, 210 (1929).

In *State v. Massey*, 542 S.W.2d 88 (Mo. App.1976), the accused argued on appeal that it was error to allow the victim to testify that the accused had attempted to bribe the victim not to testify. Rejecting the point, the appellate court held that evidence showing an accused's attempted fabrication or procurement of false evidence, attempted destruction of evidence, or attempted subornation may be received as evidence of guilt of the main facts charged. *Id.* at 90[6].

In *State v. Chunn*, 701 S.W.2d 578, 582 (Mo.App.1985), a witness testified that after the accused's arrest, the accused told the witness, "You snitch, you better not show up in court." The appellate court stated that evidence of threats by an accused toward a witness against him may be adduced in order to establish his guilt on the original charge; such evidence is admissible as showing a consciousness of guilt. *Id.* at 585[5].

*Koch, Massey* and *Chunn* demonstrate that defendant's command to Moore to keep his mouth shut and to give Gregory no information was admissible in evidence as an admission by defendant against his interest, as it manifested a consciousness of guilt. Defendant's second point is meritless.

We turn now to defendant's first point, the only one not yet addressed. In it, defendant declares that reversible error occurred when the trial court allowed Detective Gregory to testify, over defendant's objection, that defendant was intoxicated when arrested. Defendant argues such testimony "had no connection with the offense at trial and tended to show the jury the existence of an extraneous offense."

Defendant relies primarily on *State v. Himmelmann*, 399 S.W.2d 58 (Mo.1966).

There, the accused was convicted of assaulting a police officer with intent to do great bodily harm. The assault took place at, in, and alongside the officer's car which was parked several feet from the accused's vehicle. No part of the offense arose or occurred at or in the accused's vehicle, and there was no evidence of, or reference to, liquor, drinking, or intoxication as a circumstance of the assault. Over the accused's objection the trial court received in evidence a photograph of the interior of the accused's vehicle showing a less-than-full bottle of brandy lying on the passenger seat. The Supreme Court of Missouri held the photograph was not relevant, as it did not tend to prove or disprove any issue in the case. *Id.* at 62. Finding the receipt of the photograph prejudicially erroneous under the circumstances, the Supreme Court reversed the conviction and remanded the cause for a new trial. *Id.*

In the instant case we do not see how evidence that defendant appeared intoxicated at the time of arrest tended to prove or disprove any issue in the case. *Himmelmann*, therefore, appears to support defendant's first point. There are, however, circumstances in the instant case that did not exist in *Himmelmann*.

Defendant, testifying in his own defense, recounted that he and Moore were walking past MidWest Motors at the time in question and he (defendant) stopped to tie his shoe. Then, said defendant, he looked up and saw Moore getting in a truck, whereupon he (defendant) began walking toward a ditch. On cross-examination defendant conceded that when he saw Rushing, he (defendant) "took off" without telling Rushing "what was going on." Defendant also acknowledged he did not call the police, but explained he had no money to do so. Then, this:

"Q. You were stopped ... by Officer Gregory there in Dexter; weren't you?

A. Yes.

Q. You didn't tell Officer Gregory at that time what was going on; did you?

A. No, sir, because he slapped me three or four times in the process. So,

therefore, I felt like I shouldn't tell him nothing.

Q. ... And you, as a matter of fact, told Mr. Moore to keep quiet; didn't you?

A. No, sir.

Q. You didn't tell him to keep his mouth shut, huh?

A. No.

Q. Okay. And you're telling us that this was all Mr. Moore's doings, right?

A. I'm saying he did get in the truck, and when I seen what was happening, I walked away not wanting to have anything to do with it."

After defendant's testimony, the prosecutor called Detective Gregory in rebuttal. Gregory denied slapping defendant. Then, this:

"Q. ... What were you doing when you were driving down there in that police car to the police station?

A. I was trying to restrain him. As I said before, he was intoxicated, and he was getting belligerent.

Q. What was he doing?

A. He was making moves toward me. He was turning around in the seat. He was cursing. He was telling the juvenile in the back seat, of course, to not tell me anything and to keep his mouth shut."

As the above excerpt demonstrates, no objection was registered by defendant to this segment of Gregory's testimony. If evidence is improperly admitted, but other evidence before the court establishes essentially the same facts, there is no prejudice and no reversible error. *State v. Zagorski*, 632 S.W.2d 475, 478 n. 2 (Mo. banc 1982); *State v. Garrette*, 699 S.W.2d 468, 503[47] (Mo.App.1985). It follows that even if the trial court erred in overruling defendant's objection to Detective Gregory's initial testimony regarding defendant's apparent intoxication at the time of arrest, there was no prejudice—and hence no reversible error—as the same evidence came in later without objection.

Furthermore, conceding for the purpose of defendant's first point that Detective Gregory's testimony regarding defendant's apparent intoxication was irrelevant to any

issue when initially presented, it is manifest that such evidence subsequently became relevant when defendant, in his own testimony, accused Gregory of slapping him. Gregory, rebutting defendant's accusation, explained he (Gregory) found it necessary to restrain defendant because defendant was intoxicated and belligerent.

It has been held that a criminal conviction will not be reversed for error in receiving testimony that became admissible at a subsequent stage of the trial. *Cabanas v. State*, 698 S.W.2d 405, 406–07[3] (Tex.App. 13 Dist.1985). In *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (Ct.App.1974), *cert. denied*, 86 N.M. 593, 526 P.2d 187 (1974), the appellate court held that if evidence of the homicide victim's character was improperly admitted in the prosecution's case-in-chief, the error was in anticipating evidence which the defense, in opening statement, had declared would be introduced, and when the defense proceeded to do so, any error in admission of character evidence in the case-in-chief was harmless. 526 P.2d at 198[4]. In *Bradburn v. State*, 256 Ind. 453, 269 N.E.2d 539 (1971), the accused complained on appeal that when certain exhibits were received in evidence they had not been connected with him, nor had there been any showing that a crime had been committed. The appellate court held that inasmuch as the evidence was rendered relevant by later testimony, any error which may have occurred at the time the evidence was received was thereby cured and rendered harmless. *Id.* at 542[4].

Applying those principles here, we hold that even if Gregory's initial testimony regarding defendant's apparent intoxication was irrelevant, any error in receiving it was cured and rendered harmless when such testimony later became relevant by reason of defendant's testimony that Gregory slapped him. In so deciding, we emphasize that defendant's testimony about the slapping was not presented to rebut Gregory's testimony that defendant appeared intoxicated at the time of arrest. Defendant's narrative about the slapping was introduced for the purpose of explaining why defendant—who, earlier in his tes-

timony, had said it was Moore who entered the pickup—did not report Moore's action to Gregory at the time of arrest. Defendant's testimony about the slapping was not, therefore, compelled by the improper admission of Gregory's initial testimony regarding intoxication.

Defendant's first point is denied, and the judgment is affirmed.

HOLSTEIN, C.J., and GREENE, J., concur.