279 P.2d 1048

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Carl BROOKS, Defendant-Appellant.**

**No. 5840.**

Supreme Court of New Mexico.

Jan. 4, 1955.

Rehearing Denied March 2, 1955.

Hallam & Leach, Hobbs, for appellant.

Richard H. Robinson, Atty. Gen., Henry A. Kiker, Jr., Ass't. Atty. Gen., Fred M. Standley, Asst. Atty. Gen., for appellee.

COMPTON, Chief Justice.

Appellant was convicted by a jury of Lea County of murdering John Jett and was sentenced to serve a term in the penitentiary of not less than 25 years nor more than 35 years. From the judgment and sentence he prosecutes this appeal.

On August 11, 1952, about 4:00 P.M., John Jett, the deceased, Clyde Shugart and M. S. Haughton went to Club Morrice where they were served drinks. They were sitting on stools at the bar when appellant and Jean Brooks came in and sat down in a booth about 10 feet away. The appellant and Jean Brooks were divorced at the time but subsequently remarried. Shortly after they came in some one made a remark about Brooks having a gun. Haughton asked the bartender where the washroom was and upon being told, started in that direction. In reaching the washroom he had to travel in the general direction where Brooks was sitting in the booth. Haughton asked Brooks, "Don't you know its against the law to carry a gun", or words to that effect. Brooks answered "Yes", and at the same time arose and pulled a pistol and drew it on Haughton. Haughton backed away and continued to do so and about the time he had gotten back where he had been sitting, he was shot by Brooks. Jett observing Haughton's plight, remarked to Brooks, "You might pull a gun on my buddy but not on me", and made a dive for Brooks and grabbed him about the time the shot was fired. Two or three additional shots were fired by Brooks and Jett was fatally wounded. In the scuffle between Jett and Brooks, they swung around where Jett had been sitting and he grabbed the beer bottle from which he had been drinking and hit Brooks on the head, knocking him down. With the assistance of Shugart, he was disarmed. Jett then staggered out the front door and fell. He was taken to a hospital where he died about an hour later.

The cause was tried twice, the first trial resulting in a mistrial. The first trial came on for hearing on the 11th day of December, 1952. The following day, about 10:00 A.M., when it was apparent the jury would be unable to agree upon a verdict, the appellant moved the court to poll the jury to ascertain if the jury had arrived at a verdict of conviction or acquittal either of first degree murder, second degree murder or manslaughter, and if so, to return a verdict accordingly. The motion was taken under advisement and the jury was directed to consider the case further. At noon on the same day, the jury still being unable to agree on a verdict, a mistrial was declared and the jury was discharged. The court then ruled on the motion, denying the same.

◼ The first error assigned is the action of the court in denying the motion to poll the jury. While the parties to either criminal or civil cases have a right to poll the jury to ascertain whether the verdict rendered is the verdict of the individual juror, a request to have the jury polled before the verdict is rendered is premature and should be denied. Wightman v. Chicago & N. W. R. Co., 73 Wis. 169, 40 N.W. 689, 2 L.R.A. 185; State v. Blisak, 58 A.2d 711, 26 N.J. Misc. 197; State v. Hutter, 145 Neb. 798, 18 N.W.2d 203. The authorities cited by appellant in the main are where separate counts are charged. In such case, succes-

sive verdicts may be returned. The court instructed the jury that they should first consider whether the appellant was guilty of murder in the first degree, and if after a full consideration of the evidence they have acquitted him of that charge, they then should consider whether he was guilty of murder in the second degree. The jury was further charged that if after a full consideration of the evidence they have acquitted him of murder in the second degree, they should then pass to and consider whether he was guilty of voluntary manslaughter. There was no verdict rendered by the jury and only one could have been rendered under the instruction given.

◼ It is strongly contended that appellant was placed in jeopardy since the jury was discharged without a showing of legal necessity therefor. Originally, at the common law, the jury once sworn could not be discharged without giving a verdict; however, in this jurisdiction we adhere to a different rule. State v. Woo Dak San, 35 N.M. 105, 290 P. 322. The court in the trial of criminal cases is vested with a large discretion as to the time allowed to a jury to deliberate and as to the time to discharge a hung jury. There is no fixed rule laid down to control this discretion and unless it has been grossly abused, a plea of former jeopardy cannot be sustained. In the instant case the inability of the jury to

agree on a verdict constituted a legal necessity to declare a mistrial. State v. Woo Dak San, supra, and Ex parte Williams (Williams v. McAdoo), 58 N.M. 37, 265 P.2d 359. Such necessity is manifestly apparent from the report of the jury and order of the court.

"Now again comes the State of New Mexico by her District Attorney, N. R. Reese, and Assistant District Attorney, Max N. Edwards, and again comes the Defendant, Carl Brooks in his own proper person in custody of the Sheriff and accompanied by his counsel, Donald D. Hallam, Esq., and Joseph O. Walton, Esq., and again comes the Jury heretofore impaneled for the trial of this cause and report to the Court that they are unable to agree upon a verdict herein, and the Court being of the opinion that there is no reasonable probability that the jury will reach a verdict in this cause, and being fully advised,

"It Is Ordered by the Court that the Jury herein be and hereby is discharged from the further consideration of this cause, and that a mistrial of this cause be and hereby is declared."

Moreover, appellant failed to except to the action of the court in discharging the jury and such failure constituted a waiver of the claimed error. State v. Woo Dak San, supra.

Exceptions were taken to the refusal of the court to give instructions 2, 5, 8, and 9, requested by appellant. Instruction number 2 reads:

"Elsewhere in these instructions you are instructed that a person may repel force by force in the defense of his person against one who manifestly intends and endeavors by violence to take his life or do him great bodily harm and in this connection there has been evidence introduced to the effect that an attack was first made against the defendant by one M. S. Haughton, and that in repelling the attack made by M. S. Haughton, the defendant shot the said M. S. Haughton. That the deceased joined in the affray and made an attack upon the defendant by striking him on the head with a beer bottle and continued his attack with said beer bottle and that during this latter affray the defendant fired the fatal shot at the deceased. In considering this evidence you can determine whether the defendant acted as a reasonable man under the circumstances in believing that the joint attack or common purpose of M. S. Haughton and John Jett to take the life of the defendant or do him great bodily harm, in believing that it would be necessary to use and fire the pistol to resist the attack, and if you find that he acted as a reasonable

man under the circumstances, taken with the other evidence in the case, you will find that he was justified in repelling such force as he believed necessary to cause assailants to desist in their attack and you should acquit him.'

We do not think the court erred in refusing the instruction; it invaded the province of the jury in assuming as true certain disputed facts. Whether Haughton and Jett had a "common purpose" or whether they made a "joint attack" upon appellant to take his life or do him great bodily injury was a strongly contested issue. As framed, the instruction was calculated to convey to the jury a belief that appellant's evidence in this respect was correct, and for this reason is erroneous. State v. Kimbell, 35 N.M. 101, 290 P. 792; State v. Mersfelder, 34 N.M. 465, 284 P. 113; State v. Chaves, 27 N.M. 504, 202 P. 694.

Instruction number 5 reads:

"You are instructed that it is the law of the State of New Mexico as expressed by the Legislature that any person who shall kill another in the necessary defenses of his life, his family or his property or in legal defense of any illegal proceeding against himself, his wife or his family shall be adjudged not guilty. It is further the law of the State of New Mexico as expressed by the Legislature that such homicide or killing is justifiable and the defendant entitled to an acquittal when committed by any person in the lawful defense of his person, of his or her husband, wife, parent, brother, child, master, *mistress,* or servant and when there shall be reasonable ground to apprehend a design to commit a felony or do some great personal injury and the defendant has reasonable ground to apprehend that there shall be imminent danger of such design being accomplished." (Emphasis ours.)

Appellant contends that he acted in the defense of Jean Brooks as well as himself at the time he fired the fatal shot. He argues that she is embraced under the designation "mistress." We cannot accept this contention. She was not a member of the class of persons enumerated by statute, § 40–24–13, 1953 Comp., New Mexico Statutes Annotated. As used in the statute, "mistress" is the feminine of "master", and means "a woman having power, authority or ownership", not a female companion in extramarital relationship. Websters New International Dictionary. Appellant testified that Mrs. Brooks, though staying in his house, was not living with him at the time. So, this evidence alone excludes her from the class of persons enumerated by the statute, even though the word embraced an immoral relationship.

■ Instruction number 8 reads:

"You are instructed that under the laws of New Mexico one who has reasonable grounds to believe that another will unlawfully attack him or to believe that he is about to be assaulted by another and that the anticipated attack is imminent and of such character as to endanger his life or limb or to cause him serious bodily harm, has a legal right to arm himself for the purpose of resisting such attack or assault, and if in this case you believe from the evidence that the defendant having reasonable grounds to believe that he would be assaulted by the deceased and by reason thereof armed himself for the purpose of resisting such assault or attack, this circumstance should in no manner be considered by you to the prejudice of the defendant and you will indulge in no presumption against the defendant because of this act. In this connection, however, you are instructed that the defendant had no right to arm himself for the purpose of provoking the fatal difficulty."

The refusal of the instruction was not error. The court fully instructed the jury as to the right of the appellant to arm himself. The court's instruction reads:

"You are instructed that one who has reasonable grounds to believe that another will unlawfully attack him, and that the anticipated attack is imminent and of such character as to endanger his life or limb, or to cause him serious bodily harm, has the right to arm himself for the purpose of resisting such attack, and you, in such event, will indulge in no presumption against this defendant because of such act, if you believe or have a reasonable doubt that the defendant armed himself in order to defend himself from an attack which he reasonably thought was imminent and of such character as to endanger his life or limb, or cause him serious bodily harm."

We are not convinced there is any material difference in the tendered instruction and the instruction given. See State v. Burkett, 30 N.M. 382, 234 P. 681.

■ Requested instruction number 9 relates to the burden of proof in criminal cases. It is argued that the court erred in failing to instruct the jury specifically that the appellant was not required to establish his defense beyond a reasonable doubt and cites State v. Sherwood, 39 N.M. 518, 50 P.2d 968. The case is not authority for the proposition urged. The court there instructed the jury that the defendant was required to establish his defense beyond a reasonable doubt; whereas, the instructions given preclude any implication that the burden was on the appellant to establish his defense of self defense be-

yond a reasonable doubt. State v. Burrus, 38 N.M. 462, 35 P.2d 285.

■ Error is assigned in giving the following instruction:

"You are instructed that if you find from the evidence beyond a reasonable doubt that the defendant assaulted M. S. Haughton with a deadly weapon, to-wit, a pistol, without legal excuse or justification just prior to the shooting of M. S. Haughton, that such conduct on the part of the defendant amounted to a felony under the laws of the State of New Mexico, and Johnny Jett had the right and duty to prevent the commission of the felony upon the person of M. S. Haughton; and, if you find from the evidence beyond a reasonable doubt that the defendant, Carl Brooks, killed Johnny Jett while he was perpetrating or attempting to perpetrate a felony upon the person of M. S. Haughton, then and in that event you should find the defendant guilty of first degree murder."

The basis of appellant's argument is that there was no evidence reasonably tending to show that appellant assaulted Haughton without legal excuse or justification, thereby justifying Jett's intervention to prevent the commission of a felony. In this regard the drawing of a loaded gun on another without legal justification, is a felonious assault. Section 40–17–3, 1953 Compilation, New Mexico Statutes Annotated; State v. Duarte, 28 N.M. 392, 212 P. 741; State v. Coyle, 103 Kan. 750, 175 P. 971; State v. Storm, 124 Mont. 102, 220 P.2d 674. Also see 6 C.J.S., Assault and Battery, § 67. The instruction was warranted by the evidence. It was the province of the jury to weigh the evidence and determine whether Jett was trying to prevent a felonious assault upon Haughton. We review briefly Shugart's testimony:

"Haughton asked where the bathroom was. The bartender had told him where it was, and Haughton got up to go back that way, and about that time why he said, 'It's against the law to carry a gun,' or 'Don't you know it's against the law to carry a gun.' Well, naturally, I turned around and Jett did too to see what it was about, and while I was turning around, Brooks, why Brooks was coming out of the booth and he had this gun. He wasn't exactly in a standing position. And Jett said first, 'You might pull a gun on my buddy but not me.' About that time why Slim had backed up backwards, going backwards, walking backwards past me. And about that time why he shot. And Johnny made a lunge and grabbed for him and grabbed him, and two or three more shots went off  *  *  *."

■ Further claimed error was the overruling of appellant's motion to dismiss the information as to first and second degree murder, based on the affidavits of two of the jurors, at the former trial. In support of the motion, two jurors made affidavits that the jury had unanimously voted to acquit appellant of the charge of first and second degree murder and were considering the issue of manslaughter at the time the former jury was discharged. What we have previously said disposes of this question, no verdict was rendered. Nevertheless, we will dispose of this claimed error by saying that it is the general rule, except where modified by statute, that jurors will not be permitted to impeach a verdict rendered by them where the facts sought to be shown inhere in the verdict. 53 Am.Jur. "Trial" § 1105 and cases cited. We think this is a salutary rule and one that has been followed generally in this jurisdiction. Goldenberg v. Law, 17 N.M. 546, 131 P. 499; State v. Nevares, 36 N.M. 41, 7 P.2d 933.

■ The final assignment of error relates to the admission over appellant's objection of evidence of unrelated offenses. It is a general rule that evidence of offenses and crimes other than that for which a defendant is on trial is inadmissible. State v. Bassett, 26 N.M. 476, 194 P. 867. But the rule is not without exceptions.

State v. Lord, 42 N.M. 638, 84 P.2d 80. An exception is where a defendant throws open to attack his credibility as a witness. In such case he may be asked as to specific acts of misconduct. State v. Moultrie, 58 N.M. 486, 272 P.2d 686; Payne v. Commonwealth, 251 Ky. 776, 64 S.W.2d 888; People v. D'Angelo, 13 Cal.2d 203, 88 P.2d 708. Upon direct examination, appellant testified:

"Q. Mr. Brooks, have you ever been engaged in a fight before? A. No.

"Q. Did you when you were a boy? A. Oh, yes.

"Q. Since you have become a man, have you been engaged in any fight? A. No."

Upon cross-examination the district attorney in an effort to impeach the credibility of the witness, extracted an admission from appellant that he had recently engaged in a fight and had been arrested therefor. There was no error in this regard.

The judgment will be affirmed, and it is so ordered.

LUJAN, SADLER, and McGHEE, JJ., concur.

KIKER, J., not participating.