529 P.2d 283
**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Pete MARQUEZ, Defendant-Appellant.**
**No. 1402.**

Court of Appeals of New Mexico.
Oct. 30, 1974.
Rehearing Denied Oct. 30, 1974.
Certiorari Denied Nov. 27, 1974.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Donald Klein, Jr., Associate Appellate Defender, Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., George A. Morrison, Sp. Asst. Atty. Gen., Albuquerque, Leila Andrews, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted of second degree murder, § 40A–2–1(B), N.M.S.A.1953 (2d Repl.Vol. 6), and aggravated battery, § 40A–3–5(A), N.M.S.A.1953 (2d Repl.Vol. 6). He appeals. We affirm.

Defendant raises eight grounds of error which are reduced to four points.

*Facts*

On June 29, 1973, defendant and three friends drove up to the Alameda Bar on Fourth Street, Northwest, in Albuquerque. Defendant was sitting in the left seat in the rear of the car. Defendant carried a gun in his right boot because there were a lot of young men of his age after him and he needed the gun to protect himself. These persons stopped at the bar to get a quart of beer, but no one got out of the car. After defendant purchased the beer from a window, defendant called decedent and Jesse Tafoya over to the car to talk to them. "These two are my friends," defendant said. They talked for about two minutes in friendly conversation. Then defendant said "Que traes?" What's the matter? Decedent put his arm through the window, grabbed defendant by the hair to pull him out of the car to fight with him. The door was opened, defendant got out and decedent went toward defendant to fight. Defendant had the gun in his hand and pointed it at decedent who was about three feet away. Decedent swung his arm at defendant to try to take the gun away from defendant, and defendant shot decedent in the chest from which he later died. Tafoya kicked at defendant, aiming his kick toward the gun where defendant was holding it. Defendant shot Tafoya in the face from which Tafoya recovered.

When the car, in which decedent was riding, left the scene, defendant shot twice more.

(1) *Exclusion and admittance of evidence were not error.*

■ (a) Defendant contends the trial court erred in excluding evidence of a threat made by decedent against defendant which was not communicated to defendant. After defendant had tendered proof of the threat made by decedent, the court said:

. . . . I advised counsel for the Defendant this morning that the Court would allow the testimony of the Defendant's brother concerning the threat made to the brother or allegedly made to the brother by the deceased.

\* \* \* \* \* \*

THE COURT: Do you want to call that witness back or use him for surrebuttal?

MR. STRIBLING: We want to use him for surrebuttal.

Defendant never called the witness for surrebuttal. The claimed error was waived.

■ (b) Defendant contends the trial court erred in excluding specific acts of misconduct *by the decedent*, involving use *by decedent* of deadly weapons in fights. The record does not support this contention.

The court allowed one state witness to testify on cross-examination by defendant that decedent was seen with a knife and he had cut somebody; that he had seen fights of decedent at two places.

On direct examination, defendant was permitted to testify about decedent's assaulting people with knives, sticks and weapons; that his reputation was bad.

Defendant's brother, a witness for defendant, was asked about decedent's reputation. After the answer was given, the objection of the state was made and sustained. The answer was not stricken. It remained a part of the evidence. Defendant's brother also testified that he saw decedent use a weapon at dances and at two places. The court sustained objections to any further testimony on specific acts. The only other testimony defendant wanted to introduce was the threat made by decedent to defendant's brother. This was waived as shown above.

■ The determination of the admission of violent acts of the decedent, a collateral issue, rests in the discretion of the trial court. There was no abuse of discretion. State v. Moraga, 82 N.M. 750, 487 P.2d 178 (Ct.App.1971); State v. Alderette, 86 N.M. 600, 526 P.2d 194 (Ct.App. 1974).

The rules governing the admissibility of such evidence mentioned in *Alderette* are the following:

Section 20-4-404, N.M.S.A.1953 (Repl. Vol. 4, 1973 Supp.) reads in part:

(a) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, *except*:

\* \* \* \* \* \*

(2) *Evidence of a pertinent trait of character of the victim of the crime offered by an accused,* or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

\* \* \* \* \* \*

(b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *This subdivision does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.* [Emphasis added.]

Section 20-4-405, supra, reads as follows:

(a) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowed into relevant specific instances of conduct.

(b) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

■ Before character or trait evidence of decedent can be introduced, defendant must bring himself within one of the stated exceptions. This the defendant failed to do.

■ The defense is premised on the assertion that the deceased and Tafoya were the aggressors and that the defendant had shot in self-defense. There were several eyewitnesses to the incident. The state called two of them; one was a young lady who was in the car with the defendant, and the other was Jesse Tafoya. The testimony of the young lady, which coincided with the testimony of the defendant, was that the deceased and Tafoya were the aggressors. Tafoya's testimony did not contradict this. The question as to who was or were the aggressors having been established, there was no other purpose for which additional evidence of misconduct could be introduced. The defendant's sole argument is that the rule permits such evidence; therefore, the trial court has no alternative but to allow it. He is mistaken. This evidence was circumstantial, collateral and merely cumulative; and as such, its admission rested within the sound discretion of the trial court. State v. Moraga, supra; State v. Alderette, supra. There was no abuse of discretion. Furthermore, Rule 20-4-103(a) provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Exclusion of this evidence, in any event, would not have affected a substantial right of the defendant.

(c) Defendant contends the trial court erred in excluding evidence offered by witnesses regarding decedent's character. There is no merit to this claim of error.

■ (d) Defendant contends the court committed plain error in allowing examination of a witness concerning prior statements.

Rule 103(d) of Rules of Evidence [§ 20-4-103(d), N.M.S.A.1953 (Repl. Vol. 4, 1973 Supp.)] states:

Nothing in this rule precludes taking notice of plain error affecting substantial rights although they were not brought to the attention of the judge.

The wording of this rule is taken from Rule 52(b) of the Federal Rules of Criminal Procedure.

"Plain error" has been characterized in various ways such as "grave errors which seriously affect substantial rights of the accused," "errors that result in a clear miscarriage of justice," errors that "are obvious or * * * otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Campbell, 419 F.2d 1144 (5th Cir. 1969). "It is settled law that the plain error rule should be applied with caution, and invoked only to avoid a miscarriage of justice." United States v. Robinson, 419 F.2d 1109 (8th Cir. 1969).

A review of the record and the contentions made heretofore relative to the admission and exclusion of evidence shows a lack of plain error in this case.

The claimed exclusions were not erroneous.

■ (e) Defendant contends the trial court erred in admitting evidence of a previous incident involving the defendant. After the jury was impanelled and sworn, defendant moved to prohibit the state from the introduction of evidence of defendant's use of the same gun the night before at a carnival at which time a shooting incident occurred. The court stated, "When it comes up, I will rule on it."

Defendant testified in his own behalf. During cross-examination the trial court, over objection, allowed the state to question defendant about the shooting incident. At the close of the cross-examination, defendant moved for a mistrial. The motion was denied.

The defendant had testified that we was carrying a gun to protect himself because the deceased and Jesse Tafoya had told his brother, James Marquez, that they were going to kill him. Defendant also testified that the deceased had assaulted other people with "knives, sticks, what he could find, you know, weapons." He also testified that the deceased had the reputation of wanting to fight everybody when he got drunk. On cross-examination he was questioned about an incident which occurred two nights before the fatal shooting. The defendant had gotten into a quarrel with some carnival workers and had fired six shots into the ground near one of them, using the same pistol with which he shot the deceased.

Section 20–4–607, supra, provides: "The credibility of a witness may be attacked by any party, including the party calling him." As was stated by this court in State v. Hargrove, 81 N.M. 145, 464 P.2d 564 (Ct. App.1970):

We are committed to the rule that the bad moral character of a witness, including the accused when a witness in his own behalf, may be shown for the purpose of attacking credibility through securing from the witness on cross-examination admissions of specific acts of misconduct. . . .

* * * * * *

Although proof of a witness's misconduct is permissible for the purpose of attacking credibility, the extent of such showing is controllable through the exercise of judicial discretion. . . .

There was no abuse of discretion in this instance.

Defendant relies upon Rule 608(b) of the New Mexico Rules of Evidence [§ 20–4–608(b), N.M.S.A.1953 (Repl.Vol. 4, 1973 Supp.)]. It reads in part as follows:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility . . . may *not* be proved by extrinsic evidence. *They may,* however, *if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness himself* or on cross-examination of a witness who testifies to his character for truthfulness or untruthfulness. [Emphasis added.]

This is the same rule as Rule 608 of the proposed Federal Rules of Evidence. To date, no decision has been found interpreting this rule.

The commentary on Federal Rules of Evidence, Rule 608(b), explains its meaning. We quote, in part, the following:

Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on cross-examination of the principle witness himself . . . . Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. *Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite* and not remote in time. [Emphasis added.]

The state sought admission of the carnival shooting "to *show the element of intent*, that he had his gun, he bought it the day before, that he had been using it recklessly the day before." This does not test the truthfulness or untruthfulness of the defendant's testimony. If the defendant were asked whether he had used a gun before and had experience in its use, and the defendant denied this evidence, the questions would have been proper to test his truthfulness or credibility. State v. Brooks, 59 N.M. 130, 279 P.2d 1048 (1955). The specific act of misconduct at the carnival was not admissible under Rule 608(b), supra.

We turn to Rule 404(b) of the Rules of Evidence set forth above. It provides that evidence of other wrongs or acts is not excluded when offered to prove intent.

The commentary on Federal Rules of Evidence, Rule 404(b), states that evidence offered for other purposes such as "intent" does not fall within the prohibition. It continues:

No mechanical solution is offered. *The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence* in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403. [Emphasis added.]

Prior to the Rules of Evidence, the general rule in New Mexico, *subject to exceptions*, was that evidence of collateral offenses, though similar in character, were inadmissible in a criminal prosecution to establish a specific crime, even during a cross-examination of a witness. State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960), cited with approval in State v. Mason, 79 N.M. 663, 448 P.2d 175 (Ct.App.1968). In State v. Mason, supra, the danger of prejudice outweighed the probative value of the evidence. In State v. Aragon, 82 N.M. 66, 475 P.2d 460 (Ct.App.1970), the danger of prejudice did not outweigh the probative value of the evidence.

The exceptions to the general rule were stated in State v. Bassett, 26 N.M. 476, 478, 194 P. 867, 868 (1921). The court said:

. . . The so-called exceptions to the general rule have been stated to be that where the proof of other acts or crimes tends to establish motive, *intent*, absence of a mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial, it is admissible. . . . [Emphasis added.]

Rule 404(b), supra, is almost identical with the exception rule stated in State v. Bassett, supra. It is a common law rule that has been followed in New Mexico for over half a century, beginning with State v. Starr, 24 N.M. 180, 173 P. 674 (1918), and ending with State v. Lopez, 85 N.M. 742, 516 P.2d 1125 (Ct.App.1973).

The issue to decide is whether the carnival shooting incident two days before the crimes in question bears upon the intent of the defendant when he shot the decedent and one Tafoya. We believe it does. It shows the state of mind of the defendant, his characteristic conduct in the use of a gun. It was relevant on the question of intent.

We have held that the "[a]dmission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be

disturbed on appeal in the absence of a clear abuse of that discretion." State v. Valdez, 83 N.M. 632, 637, 495 P.2d 1079, 1084 (Ct.App.1972), aff'd on other grounds, 83 N.M. 720, 497 P.2d 231 (1972); State v. Biswell, 83 N.M. 65, 488 P.2d 115 (Ct.App.1971); State v. Moraga, supra.

Rules 608(b) and 404(b) are subject to this rule. See United States v. Rohland, 468 F.2d 238 (3rd Cir. 1972); United States v. Gornick, 448 F.2d 566 (7th Cir. 1971); United States v. Brewer, 427 F.2d 409 (10th Cir. 1970). The carnival incident was relevant, not remote in time, and the danger of prejudice did not outweigh the probative value of the evidence. The trial court did not abuse its discretion.

(2) *Giving of instruction was not erroneous.*

▮ Over objection, the court gave the following instruction:

It is within the province of the jury to imply malice in a case where a killing with a deadly weapon has been established.

You may imply malice in this case if you find beyond a reasonable doubt that the killing was perpetrated by means of a deadly weapon.

The above instruction has been approved in State v. Duran, 83 N.M. 700, 496 P.2d 1096 (Ct.App.1972); State v. Anaya, 80 N.M. 695, 460 P.2d 60 (1969); State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969).

Defendant contends that he was entitled to have the jury determine malice based upon all the facts and circumstances of the case, not just the fact that the only weapon he had happened to be a gun when confronted with two people who threw a punch and a kick to his face.

In the instant case, immediately preceding the above instruction, the court instructed the jury on the meaning of implied malice without objection, as follows:

Malice shall be implied with no considerable provocation appears or *when all*

*circumstances of the killing show a wicked and malignant heart.* [Emphasis added.]

When read together, the challenge of the defendant has been met. After a careful review of the trial court's instruction, we find no error in giving the instruction on implied malice. State v. Anaya, supra.

(3) *Defendant was not entitled to a preliminary hearing.*

▮ Defendant was not granted a preliminary hearing. Defendant contends that Rule 20(d) of the Rules of Criminal Procedure [§ 41–23–20(d), N.M.S.A.1953 (2d Repl.Vol. 6, 1973 Supp.)] requires that a preliminary hearing be held within ten days following initial appearance if the defendant be in custody. This mandate is necessary "[i]f the court determines that a preliminary examination must be conducted . . . ." Rule 20(a), supra.

This rule applies "to all proceedings in magistrate court relating to those persons accused of offenses not within magistrate court trial jurisdiction." Rule 1 [§ 41–23–1, supra.].

On July 23, 1973, a criminal complaint was filed in the magistrate court. On the same day, defendant moved to dismiss the complaint because a preliminary hearing was not held as required by Rule 20. Rule 20 was not then applicable. No initial appearance had occurred.

On July 26, 1973, the grand jury indictment was filed. Thereafter, defendant did not have the right to a preliminary hearing. State v. Burk, 82 N.M. 466, 483 P.2d 940 (Ct.App.1971).

(4) *Denial of defendant's request for discovery of decedent's criminal record was not error.*

▮ On August 13, 1973, defendant moved for discovery pursuant to Rule 27 of the Rules of Criminal Procedure. On August 21, 1973, the motion was granted "except for . . . rap sheet of victim." Rule 27 does not provide for discovery of

the criminal record of a decedent of whose murder the defendant was charged.

At the close of the state's case, the court ordered the district attorney to obtain a copy of the deceased's rap sheet for defendant to inspect the following morning.

 The following morning the court notified the defendant that the district attorney's office said it had no information in their files or the files of the Albuquerque Police Department that indicated any kind of criminal record for decedent. The district attorney stated the police department did not check the F.B.I. record. This was a good faith effort to comply with the court's order.

Affirmed.

It is so ordered.

HERNANDEZ, J., specially concurring.

HENDLEY, J., dissenting.

HERNANDEZ, Judge, specially concurring.

I concur in the result reached by my brother Sutin, but I find myself in disagreement with his reasoning under paragraph I, part (e), wherein he finds the challenged testimony admissible under Rule 404(b), to show intent. A review of the defendant's testimony relating to his claim of self-defense is necessary to an understanding of this issue. On direct examination, the defendant testified in part as follows:

"Q. Did you have a gun on you at that time?

"A. Yes, I did.

"Q. What kind of gun was it?

"A. A .22 caliber.

"Q. When did you get it?

"A. I got it that same day. It was a Friday.

"Q. Why did you get it?

"A. To protect myself.

"Q. Why?

"A. From guys that were going to come after me.

"Q. Which guys are you referring to?

"A. Pardon?

"Q. Which guys are you referring to?

"A. Gutierrez and Tafoya.

"Q. Why did you think they were going to come after you?

"A. Because they said that I ratted on them for possession of marijuana and heroin, they were selling, and that is why they were after me because they said I ratted on them, on both of them. . . ."

"Q. Why would you carry a gun? Why were you in fear of them at that time, just because you had ratted on them? What are you referring to there?

"A. Protecting myself, and I was scared they were going to kill me because they told my brother they were going to kill me and everything. . . ."

"A. . . . I know that Tony Gutierrez for a long time and we didn't get along together that good. But, anyway, he's done this before, you know.

"Q. He's done what?

"A. Assaulting people.

"Q. Like how?

"A. Fights.

"Q. What did he do it with?

"A. Knives, sticks, what he could find, you know, weapons.

"Q. Are you familiar with Mr. Gutierrez' reputation in that community?

"A. Yes, sir.

"Q. What sort of reputation does Mr. Gutierrez have?

"A. It is not real nice to begin with, because once he gets kind of drunk he wants to fight everybody. I didn't like it, you know. . . ."

On cross-examination by the prosecutor defendant responded as follows:

"Q. And then you really had no reason to believe that he wanted to fight you, did you, on the 29th of June?

"A. Well, he came at me kicking so that is when I shot him. I got scared, you know, that they were going to kill me. Just. like I say, I wouldn't have had a chance if they would have got me on the ground. . . ."

"Q. You admit that you actually did shoot Tony Gutierrez?

"A. Yes, sir, in self-defense, you know. . . ."

Rule 608(b) provides in part: "Specific instances of the conduct of a witness, for the purpose of attacking his credibility . . . may . . . if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination . . . ." In my opinion the State had the right under this section to probe the credibility of defendant's position that he acted in self-defense by inquiring into his conduct only two nights before when he fired several shots from the same pistol at another person. The committee notes on this section recite in part:

> "Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time."

The questions and answers about the prior incident were probative of the truthfulness of defendant's claim of self-defense and were not remote in time.

HENDLEY, Judge dissenting.

I respectfully dissent from that part of the majority opinion, (1)(e), relating to the admission of testimony regarding the carnival incident. I would grant the motion for rehearing. I will repeat my views as previously expressed in the first opinion which the majority have withdrawn.

During cross-examination, the trial court over defendant's objection, allowed the state to question defendant about a shooting incident. At the end of cross-examination defendant's motion for a mistrial was denied.

The cross-examination disclosed that, two nights before the shooting in question, defendant attended a carnival carrying the same gun used in the shooting of decedent and Tafoya. The carnival manager made threats of attack, cursed and pushed defendant against a car. Defendant testified he did not have an intent to injure or kill the manager for he shot "four or five feet away in the ground" to keep the manager away. Defendant and a friend then ran away and tried to hide under a bridge. The manager and others caught defendant's friend and beat him up.

Section 20–4–607, relied on by the majority does not answer the question. Certainly the credibility of a witness may be impeached. However, I fail to see how the carnival incident had anything to do with credibility.

In the federal commentary to § 20–4–404(b), it states that the determination to be made by the trial court is "whether the danger of undue prejudice outweighs the probative value of the evidence." See also § 20–4–403. Our review is to determine whether the trial court abused its discretion. State v. Valdez, 83 N.M. 632, 495 P. 2d 1079 (Ct.App.1972). I would hold the trial court abused its discretion.

The prejudice in this case is obvious. The carnival incident casts the defendant in the role of a "bad guy" who is completely reckless with a gun. The probative value in the instant case is non-existent. The testimony admitted has nothing to do with credibility. Neither does it go to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Section 20–4–404(b).

I would reverse for the foregoing reasons.