**James Edward EWING, Petitioner-Appellant,**

v.

**Harvey WINANS, Respondent-Appellee.**

**No. 83–1037.**

United States Court of Appeals, Tenth Circuit.

Nov. 30, 1984.

Edwin Macy, Asst. Federal Public Defender, Albuquerque, N.M. (Tova Indritz, Federal Public Defender, Albuquerque, N.M., with him on briefs), for petitioner-appellant.

Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, N.M. (Paul Bardacke, Atty. Gen., Santa Fe, N.M., with him on brief), for respondent-appellee.

Before BARRETT, LOGAN and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Petitioner below, James Edward Ewing (Ewing), appeals from the order of the district court, adopting the findings and recommendation of the United States Magistrate, and denying his writ of habeas corpus made pursuant to 28 U.S.C. § 2254.

Ewing was convicted in a New Mexico state court of second degree murder with firearm enhancement. He contended that he acted in self-defense. Ewing did not testify at the trial. The New Mexico court of appeals reversed. On certiorari, the Supreme Court of New Mexico reversed the decision of the court of appeals and affirmed Ewing's conviction and sentence. *See State v. Ewing,* 97 N.M. 235, 638 P.2d 1080 (1982). Following exhaustion of his state remedies, Ewing brought this action for the issuance of a writ of habeas corpus. The issues presented here were presented to the New Mexico Supreme Court which held against Ewing.

Ewing contends that the trial court erred by (1) denying him the right to confront and cross-examine one Tracy Wilson, whose deposition was used by the prosecution against Ewing due to her unavailability at trial, (2) refusing to admit into evidence prior convictions of the victim, and (3) denying him the right to confront and cross-examine the prosecution's character witness (regarding the character of the victim). The facts relevant to these issues will be presented in our discussion.

■ 28 U.S.C. § 2254(d) requires federal courts considering an application for a writ of habeas corpus by a state prisoner to presume the accuracy of the findings of fact made by the state courts except under limited circumstances. Federal courts must accept a state court's interpretation and application of its constitution and laws unless they are inconsistent with fundamental principles of liberty and justice. *Silva v. Fox,* 351 F.2d 61 (10th Cir.1965). The federal habeas corpus petitioner has the burden of establishing by convincing evidence that the state court determinations were erroneous. *La Vallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). We hold that Ewing has failed to satisfy this burden. Hence, following a full hearing and determination on the merits in a state court of competent jurisdiction, the factual findings of the state court are to be afforded the presumption of correctness. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

I.

■ Ewing contends that his Sixth Amendment right to confront witnesses against him was violated when the trial court permitted the prosecution to read Tracy Wilson's deposition into the record (and selected passages to the jury) absent a sufficient showing of Wilson's unavailability to appear at trial and because of the inherent unreliability of the statements contained therein.

Tracy Lee Wilson, the primary prosecution witness, was Ewing's girlfriend. Wilson bore a child fathered by Ewing while residing in Albuquerque, New Mexico, during a period of about one and one-half years while Ewing was separated from his wife and family. Ewing had returned to his wife and family in Albuquerque prior to the shooting involving the second degree murder charge lodged against him, but continued to see Wilson frequently in Albuquerque.

Wilson saw Ewing regularly, sometimes at his home where Ewing's wife apparently received her without rancor and was kind and considerate to Tracy's child. For some time prior to March 11, 1980, Ewing and one John Jenkins played cards weekly at a club. During this time, Jenkins made sexual advances toward both Tracy Wilson and Ewing's wife. Ewing had knowledge of Jenkins's advances. At this time, Jenkins

was also having an affair with a friend of Tracy Wilson's named Bernice Bad Horse who was in Jenkins's bedroom at the time of the shooting. Neither Wilson nor Bad Horse appeared at trial, although the State attempted to secure their presence.

Ewing, accompanied by Tracy Wilson, went to Jenkins's apartment on the evening of March 11, 1980, with the intention of talking with Jenkins about the remarks Jenkins had purportedly made about having sexual relations with Ewing's wife. When the "visit" was over, Jenkins was dead.

Jenkins and Ewing, while arguing, proceeded to Jenkins's kitchen, out of the sight of Tracy Wilson. A scuffle occurred and a gun, apparently taken by Ewing from Jenkins's cabinet or from Jenkins, was fired, striking Jenkins. Ewing stated to the police that he took the gun away from Jenkins in the kitchen and shot him. Tracy Wilson's deposition testimony was that following the scuffling in the kitchen and the sound of one shot Jenkins, hollering and swearing at Ewing, ran down a hallway into a bedroom with Ewing in pursuit, holding the gun. After Wilson heard more shots in the bedroom, Ewing came out holding the gun in his hand. Ewing and Wilson then went to the apartment of Wilson's cousin where Wilson took the gun from Ewing and proceeded to hide it in the apartment. That evening, Ewing and Wilson checked into a motel in Albuquerque. The following morning they voluntarily reported to the Albuquerque Police Department, where Tracy Wilson voluntarily signed a statement. Ewing also signed a written statement of his version of the meeting and shooting, and a written confession which was later admitted into evidence. In addition, Tracy Wilson later appeared and testified before the Grand Jury, and was deposed by the government. Wilson had been granted complete immunity. The State introduced a tape-recorded statement given by Ewing to the police after he surrendered. Ewing stated that he acted in self-defense. He contended that Jenkins had reached for a gun in the kitchen and that he (Ewing) got control of it and shot

Jenkins and that he followed Jenkins down the hallway to the bedroom because he believed Jenkins was going after another gun.

The District Attorney's investigator encountered much difficulty in locating Tracy Wilson to serve her with the Grand Jury subpoena. When the investigator finally contacted her by telephone, Wilson told him her location; the investigator said he would come to the address that afternoon to serve the subpoena. He decided, however, to go to the address immediately. As he arrived, he encountered Tracy Wilson leaving the address in an apparent attempt to avoid service of the subpoena. Later, prior to trial and after due notice, the investigator encountered great difficulty in finding Tracy Wilson for the purpose of serving her with a subpoena to take her deposition. She had moved from her previous address and left no word of her whereabouts. The investigator checked addresses, spoke with neighbors, schools and the welfare office before he finally located her and served the subpoena for deposition. The deposition continued for a period of two days and the court ordered Tracy Wilson detained in jail overnight in order to assure her presence during the second day. During the course of the deposition, she acknowledged that she had moved from the previous address without notification to officials. When the prosecutor attempted to pin down the new address, Wilson recalled only that it was on Palomas Street. Tracy Wilson had intentionally avoided the authorities and had not abided her promise to notify them of her whereabouts. Even so, her counsel, Mr. Clear, objected to the taking of the deposition because "[t]here has been no showing that Miss Tracy Wilson is not willing to cooperate with the District Attorney's office ... no showing that she would be unable to attend a hearing [trial]. In other words, the trial or this deposition obviously, she is here. As I understand it, she is out on bond at this time and has voluntarily shown up." (R., Vol. IV, p. 38.)

The record clearly shows that Tracy Wilson was never a cooperative witness. The

prosecution established that she had refused to come to the District Attorney's office to discuss the case, that she had moved from her first listed Albuquerque address without any notification to law officers and had failed to notify either the District Attorney or other law enforcement officials of her whereabouts. When she phoned the District Attorney's office about a week prior to her deposition, she refused to give him an address or telephone number where she could be reached or notified for purposes of her appearance at the trial. Wilson, during the course of her deposition, admitted that when she phoned the prosecutor prior to her deposition, she stated she was calling from South Dakota; however, she was in fact calling from Albuquerque. (*Id.* at 84.) Wilson related that she had not seen other material witnesses Bernice Bad Horse or Frances Martinez during that period. However, an Albuquerque detective had reported seeing Wilson, Bernice Bad Horse, and Frances Martinez together in Albuquerque during that period. (R., Vol. II, p. 19.) Tracy Wilson did execute a $250.00 Bail Bond to appear at the deposition and such other places as required in accordance with the court orders on May 22, 1980, with two personal sureties, constituting a continuing bond for her appearances. (*Id.* at 25.) Thereupon, the warrant for her arrest was cancelled, and the court ordered her release from custody. (*Id.* at 34.)

Following the deposition, Tracy Wilson gave the District Attorney a new address where she could be found and she was requested to keep in contact with his office. A subpoena was issued for Tracy Wilson's appearance at trial. When the District Attorney's process server/investigator went to the new address, *he found the apartment completely vacated,* and he testified that he had no more leads. He had previously checked all prior leads and contacts in relation to the deposition matter. The prosecutor stated for the record that about two weeks prior to trial he had seen Tracy Wilson in the presence of Ewing, who had been released on bond, at a bus stop in Albuquerque and that he phoned the police

to effect her arrest but that they arrived too late.

With the above facts established, the New Mexico Supreme Court found that Tracy Wilson was in fact an unavailable witness as that term is used in New Mexico Evidence Rule 804(a) and that her deposition was properly admitted. The court said, *inter alia:*

> The trial judge allowed a portion of the deposition to be read to the jury. New Mexico Rule of Criminal Procedure 29(n), N.M.S.A. 1978 (Supp.1981), provides for the use of depositions in criminal proceedings:
>
>> At the trial, or at any hearing, any part or all of a deposition may be used as evidence if:
>>
>> (1) the witness is unavailable, as unavailability is defined in Paragraph (a) of Rule 804 of the Rules of Evidence
>>
>> . . . .
>
> Under New Mexico Evidence Rule 804(a), N.M.S.A. 1978, "[u]navailability as a witness includes situations in which the declarant: ... (5) is absent from the hearing and the proponent of [her] statement has been unable to procure [her] attendance by process or other reasonable means." The burden is upon the State to prove the unavailability of its witness. *See State v. Vialpando,* 93 N.M. 289, 599 P.2d 1086 (Ct.App.), *cert. denied* 93 N.M. 172, 598 P.2d 215 (1979). When determining whether the State was diligent in attempting to produce a witness for trial, the trial court may take into consideration the totality of the circumstances. *Id.* It is obvious that the witness did not want to testify. The investigator had considerable difficulty in serving her for the grand jury and for her deposition. The record in this case shows diligence by the State in attempting to subpoena the defendant's girlfriend to be called as a State's witness at trial. We find that the trial court did not err in allowing selected passages of the deposition to be read to the jury.

638 P.2d at pp. 1083–84.

The trial court admitted in evidence the deposition which included Tracy Wilson's

initial statement to the Albuquerque police and her Grand Jury testimony. (R., Vol. III, pp. 43–133.) The jury heard only "selected passages" of the deposition. No challenges are raised thereto. The trial court did so following a hearing, having found that Tracy Wilson was an unavailable witness.

All three of the prosecution's material witnesses, Tracy Wilson, Bernice Bad Horse, and Frances Martinez had changed addresses before giving depositional testimony (under bench warrants) without notification to law enforcement authorities. A detective with the Albuquerque police department saw the three material witnesses together in Albuquerque on May 14, 1980. It was on May 16, 1980, that Tracy Wilson phoned Assistant District Attorney Vigil and refused to give him a phone number or address where she could be reached for trial appearance. Her deposition was taken on May 22, 1980. The State District Court judge entered an order directing the taking of Tracy Wilson's deposition on May 22, 1980, granting her complete immunity, finding that "[h]er testimony is material and relevant to the offense charged and she may be unavailable for her testimony at trial." (R., Vol. II, p. 33.) The jury was selected August 29, 1980, and the trial conducted from September 2 to 4, 1980. The trial judge could reasonably conclude, as he did, that due diligence could not produce Tracy Wilson's attendance at trial. In light of these facts and circumstances, we hold that the record supports the finding of the New Mexico Supreme Court that Tracy Wilson was an unavailable witness.

The United States Supreme Court, in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), set out a two-prong test for the admissibility of a deposition or transcript of an earlier judicial proceeding in satisfaction of the confrontation clause of the Sixth Amendment. In *United States v. Rothbart*, 653 F.2d 462, 465–66 (10th Cir.1981) we quoted the two-prongs of *Ohio v. Roberts* required to satisfy the confrontation clause and Rule 804(a):

First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. *See Mancusi v. Stubbs*, 408 U.S. 204 [92 S.Ct. 2308, 33 L.Ed.2d 293] ... (1972); *Barber v. Page*, 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] ... (1968) ....

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts*, 291 U.S. [97] at 107 [54 S.Ct. 330, 333, 78 L.Ed. 674].

In the instant case, given the "cat-and-mouse" routine confronting the prosecution in locating the whereabouts of Tracy Wilson, we cannot reject the holding of the Supreme Court of New Mexico that the prosecution did make sufficient diligent attempts to subpoena Tracy Wilson as State's witness at trial.

Ewing argues, however, that Wilson's deposition lacked the trustworthiness required by the confrontation clause of the Sixth Amendment. *See Ohio v. Roberts, supra.* We disagree. Both Wilson and Ewing were present and represented by separate counsel. Wilson was fully examined and cross-examined. Insofar as the element of "trustworthiness" is concerned in relation to Tracy Wilson's statement to the police, there is no contention that she did not *voluntarily* go to the police for the specific purpose of relating the facts of the Jenkins shooting. Insofar as Tracy Wilson's testimony before the Grand Jury is concerned, it was given under oath. At the deposition, her statement and testimony were offered and admitted for impeach-

ment purposes as prior inconsistent statements under N.M. Rules of Evid. 801. The trial court apparently recognized the danger inherent in the blanket admission of the deposition, and confined the jury's consideration to selected passages. We cannot hold that the New Mexico trial court erred in the admission of the deposition. The New Mexico Supreme Court was cognizant of the ruling in *State v. Barela*, 97 N.M. 723, 643 P.2d 287 (Ct.App.1982), that the "other" exceptions to Rule 804 must be stringently applied in criminal cases in light of the confrontation clause of the Sixth Amendment. It appears the court followed the rule in *State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct.App.1978), that the use of Subdivision (b)(6) of Rule 804 is an effective method of avoiding the exclusion of hearsay testimony that is clothed with special assurance of trustworthiness.

Our review does not disclose significant or material inconsistencies between Wilson's police statement, her Grand Jury testimony, and depositional testimony. Thus, any inconsistencies could not have, in our view, significantly impaired the "indicia of reliability" required by *Ohio v. Roberts, supra,* or the "equivalent circumstantial guarantees of trustworthiness" set forth in N.M. Rule of Evidence 804, *supra,* and the New Mexico decisions above referred to.

Tracy Wilson consistently referred to Ewing as her "boyfriend" and the father of her child who was providing some financial support for the child. Following the shooting of Jenkins, she and Ewing spent the night together in a motel. Tracy Wilson hid the gun Ewing had on his person following the shooting. She testified about several pertinent matters: she wanted to help Ewing; she had lied to the prosecutor when she told him she was calling long-distance from South Dakota when in fact she was calling from Albuquerque (R., Vol. IV, p. 84); she knew she was to appear at trial and testify. (*Id.*) In the course of the Wilson deposition, the prosecutor moved, over objection, to examine Tracy Wilson as a hostile witness in light of her failure to cooperate. Even so, we do not consider the discrepancies in Tracy Wilson's statements

to be significant. She was consistent in these critical, material areas: She was certain that Ewing shot Jenkins; that Ewing, and Ewing only, was holding a gun when she saw Jenkins and Ewing moving down a hallway; that she heard shots fired in a bedroom area and immediately thereafter she saw Ewing leave the bedroom with a gun in his hand; and that she took the gun from Ewing after leaving Jenkins's home and hid it in her cousin's apartment.

In *California v. Green,* 399 U.S. 149, 172–173, 90 S.Ct. 1930, 1942, 26 L.Ed.2d 489 (1970), Mr. Justice Harlan, in a concurring opinion, observed that the confrontation clause of the Sixth Amendment cannot equate "confrontation" with "cross-examination" and "if 'confrontation' is to be equated with the right to cross-examine, it would transplant the ganglia of hearsay rules and their exceptions into the body of constitutional protections. The stultifying effect of such a course upon this aspect of the law of evidence in both state and federal systems need hardly be belabored ...."

Under all of the facts and circumstances, we conclude, as did the New Mexico Supreme Court, that Ewing's Sixth Amendment right of confrontation was not violated by the admission of the deposition of unavailable witness Tracy Wilson.

## II.

Ewing argues that the State trial court violated his right to due process of law by refusing to admit into evidence proof of the deceased Jenkins's "violent past" demonstrated by exhibits showing that Jenkins (1) had plead guilty in 1947 to assault with a deadly weapon on a Mr. Strickland, (2) had been charged with an open count of murder of Mary Lee Strickland in 1948 and plead guilty to the lesser charge of voluntary manslaughter, and (3) had, in 1979, been convicted of negligent use of a firearm. The circumstances surrounding the first two convictions involved Jenkins's sexual relationships with married women and his use of a gun to settle the disputes. Ewing offered these convictions, under Rule

405(b) of the New Mexico Rules of Evidence as specific acts of conduct on the part of Jenkins demonstrating that he was the aggressor and that Ewing acted in self-defense.

To buttress his argument, Ewing relies in material part upon Tracy Wilson's deposition testimony and her statements made to the Grand Jury, together with his personal knowledge that Jenkins had stated that he shot and killed a woman and he kept guns at his apartment.

The Supreme Court of New Mexico, in *State v. Ewing, supra* at 1081–1082, addressed and decided this contention adverse to Ewing, as follows:

> The killing of another person is justifiable if the killing was to protect one from great personal injury. § 30-2-7(A)–(B), N.M.S.A. 1978. When proving self-defense, the victim's character or behavior may be shown by the defendant. New Mexico Evidence Rule 404(a), N.M.S.A. 1978, states:
>
> > Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: ...
> >
> > (2) CHARACTER OF VICTIM—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor ....
>
> Although the defendant may introduce evidence of the general reputation of the victim for lawless and violent character, the defendant ordinarily cannot introduce specific acts of such violence. *State v. McCarter*, 93 N.M. 708, 604 P.2d 1242 (1980). However, an exception to this rule was reiterated by Justice Federici in *State v. McCarter, supra:*
>
> > [T]his Court [has] held that evidence of specific acts of violence on the part of the deceased could be introduced by a defendant if there was evidence that

the defendant had been informed of, or had knowledge of, those acts at the time of the homicide. Such evidence would have some bearing on the reasonableness of defendant's apprehension for his life.

*Id.* at 712, 604 P.2d at 1246.

Ewing's statements stated that he knew that the victim had "shot a few people"; however, since he chose not to testify, and there is no other evidence to show that Ewing knew of these specific acts, they cannot be admitted. Even if Ewing were to testify that he knew specifically of the convictions, the evidence of specific acts is not automatically admissible. *Id.* Admissibility of relevant evidence is within the discretion of the trial judge.

In determining admissibility of relevant evidence, the trial judge must evaluate the evidence pursuant to New Mexico's Rule of Evidence 403, N.M.S.A. 1978, which reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

The exclusion or admission of relevant evidence is a matter within the sound discretion of the trial court. *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct. App.), *cert. denied*, 87 N.M. 47, 529 P.2d 273 (1974).

The trial court excluded evidence of the convictions because they were too old; its limited probative value was greatly outweighed by its prejudicial effect. An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. *State v. Brionez*, 91 N.M. 290, 573 P.2d 224 (Ct.App.), *cert. denied*, 91 N.M. 249, 572 P.2d 1257 (1977). We will not disturb the trial court's determination unless there is a clear abuse of that discretion. *State v.*

*Marquez, supra.* We have reviewed the record in this case and find no abuse of the trial court's discretion in excluding evidence of the thirty-two and thirty-three year old convictions.

▉▉▉ Rule 404(b) is not exclusionary. It permits the proof of past wrongs unless they are introduced *solely* to prove criminal disposition. *United States v. Naranjo,* 710 F.2d 1465 (10th Cir.1983); *United States v. Nolan,* 551 F.2d 266 (10th Cir.1977), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). Such evidence should be excluded if the trial court determines that the danger of unfair prejudice arising from its admission is substantially greater than its tendency to prove a disputed fact issue. Federal Rules of Evidence Rule 403; *United States v. Naranjo, supra.* Such determinations are within the sound discretion of the trial court. *United States v. Nolan, supra.*

▉▉▉ The prior convictions of Jenkins proffered by Ewing were thirty-two and thirty-three years old, respectively. The question is whether such evidence tends to make it more probable that Jenkins was the first aggressor in this case and, more pertinently, whether, under Rule 405(b), the character or trait of character of a person is an essential element of the charge, claim or defense. The court did not err in holding that its prejudicial effect outweighed its probative value. Rule 403, *supra.*

In *United States v. Gilliland,* 586 F.2d 1384 (10th Cir.1978) we held that if a defendant utilizes a character witness, the Government may cross-examine or introduce evidence of prior convictions in rebuttal pursuant to Fed.Rules of Evid. Rules 404(a)(1), 405(a), 28 U.S.C., providing that the trial court correctly determines that the prejudicial effect of the evidence offered to rebut character evidence does not outweigh its probative value. We there held that convictions dating back fourteen to thirty-four years were too remote in time and that their prejudicial effect outweighed their probative value. We relied on this court's *en banc* decision in *United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972). There is no evidence that Ewing knew of Jenkins's prior convictions. It is uncontested that Ewing elected to confront Jenkins at Jenkins's home with knowledge of statements previously attributed to Jenkins that he kept guns and had shot and killed a woman. The trial court did not err in determining that the prejudicial effect of the prior convictions outweighed their probative value under Rule 403. No abuse of discretion occurred.

The trial court submitted a "self-defense" instruction which, in our view, was very favorable to Ewing. The giving of this instruction, in effect, adopted Ewing's testimony relative to statements attributed to Jenkins that he kept guns and shot and killed a woman. The instruction read:

INSTRUCTION NO. 11

Evidence has been presented that the defendant killed John Jenkins while defending himself.

If defendant killed John Jenkins in self-defense you must find him not guilty.

A killing is in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of John Jenkins reaching for a gun; and

2. The defendant was in fact put in such fear by the apparent danger and killed John Jenkins because of that fear; and

3. The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self-defense.

(R., Vol. II, p. 246.)

### III.

Ewing contends that his right to confront and cross-examine was denied when the trial court refused him the right to cross-examine a state character witness.

The state called one of Jenkins's neighbors, one Martha Johnson, who testified that Jenkins, whom she had known for about three-and-one-half years, was very peaceful. The defendant attempted to cross-examine this witness relative to her knowledge of Jenkins's prior convictions which occurred thirty-two and thirty-three years earlier. The trial court sustained the prosecutor's objection and struck the question and answer. Jenkins's propensity for violence had been previously presented by Ewing's statement to the police following his voluntary surrender and in statements made by Tracy Wilson. Defense counsel was permitted to question the witness, pursuant to Rule 405(a), about whether she had heard of any prior convictions of Jenkins. The witness testified that she had not.

 We adopt the reasoning of the Supreme Court of New Mexico set forth in *State v. Ewing, supra,* in holding that the trial court did not abuse its discretion in denying the subject cross-examination:

> On cross-examination, the defense counsel attempted to question the witness about the victim's thirty-two and thirty-three year old convictions pursuant to New Mexico Evidence Rule 405(a), N.M. S.A. 1978, which reads:
>
>> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into *relevant specific instances of conduct.*
>
> The trial judge did not allow specific questions concerning the prior convictions; however, defense counsel was allowed to ask the witness if she had heard of any prior convictions of the victim to which she answered "no".
>
> On cross-examination, it is within the trial judge's discretion to exclude evidence. The trial court in its discretion may exclude inquiry of convictions such as these that are so remote, unless recent misconduct causes a revival. *Mi-*

*chelson v. United States,* 335 U.S. 469, 484, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948).

> Although such convictions are relevant and the proper subject for cross-examination, it is within the trial judge's discretion to exclude them. The defendant argues that the victim's recent conduct *revived* the conviction; however, it was within the trial judge's discretion to determine whether there was a revival that would allow the witnesses to be cross-examined about the convictions. The limits of cross-examination are within the discretion of the trial court and will be disturbed on appeal *only* if that discretion is abused. *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (Ct.App.1972). We find no abuse of discretion.

638 P.2d at 1082–83.

WE AFFIRM.